347 So.2d 599 (1977)
AVILA SOUTH CONDOMINIUM ASSOCIATION, INC., a Florida Non-Profit Corporation, in Its Own Interest and Behalf of Its Members, et al., Petitioners,
v.
KAPPA CORPORATION, a Florida Corporation, et al., Respondents.
No. 48753.
Supreme Court of Florida.
March 31, 1977.
As Corrected on Denial of Rehearing June 13, 1977.
*601 Alan S. Becker and Jeffrey E. Streitfeld of Becker & Poliakoff, P.A., Miami Beach, for petitioners.
Gerald F. Richman and James D. Little, of Frates, Floyd, Pearson, Stewart, Richman & Greer, Miami, for respondents.
HATCHETT, Justice.
Petitioners stated several counts in a complaint, which was met with a motion to dismiss. The trial court dismissed with prejudice the first, fifth, seventh, and eighth counts, and ordered the class action allegations stricken as to the remaining counts. In striking the class action allegations, the trial court ruled Section 711.12(2), Florida Statutes (1975),[1] unconstitutional. *602 In dismissing Count I, which was grounded on Section 501.204, Florida Statutes (1975),[2] the trial court declared Section 501.204 unconstitutional. An appeal was taken from the trial court's order, but on motion of the appellants, the cause was remanded as to Count I, after Section 501.204, Florida Statutes (1975), withstood constitutional attack in Department of Legal Affairs v. Rogers, 329 So.2d 257 (Fla. 1976). Still pending here after this partial remand are the questions whether Counts V, VII, and VIII should have been dismissed; whether the class action allegations should have been stricken; and certain other matters raised by cross-assignments of error.
Insofar as the trial court's order dismissed Counts V, VII, and VIII with prejudice, it was a final order, properly appealable to the District Court of Appeal, unless appealable here on account of "initially and directly passing on the validity of a state statute or a federal statute or treaty, or construing a provision of the state or federal constitution." Art. V, Section 3(b)(1), Florida Constitution. In granting the motion to dismiss as to Count V, the trial court ruled that Section 711.66(5)(e), Florida Statutes (1975), did not operate retroactively and stated as one reason for this ruling that "retroactive application would be unconstitutional under both the Florida and Federal Constitutions as an impairment of the obligations of contracts." Because of this constitutional construction, which also touches on the validity of a statute, cf. Deltona Corp. v. Bailey, 336 So.2d 1163 (Fla. 1976), we have jurisdiction of the appeal from those portions of the trial court's order which constitute final orders. Division of Beverage v. Foremost-McKesson, Inc., 330 So.2d 143 (Fla. 1976); Metropolitan Dade County Trans. Auth. v. State Dept. of Highway Safety & Motor Vehicles, 283 So.2d 99 (Fla. 1973); Williston Highlands Development Corp. v. Hogue, 277 So.2d 260 (Fla. 1973). Insofar as the order appealed is interlocutory in nature, we have treated the appeal papers as a petition for certiorari. Harris v. Beneficial Finance Co., 338 So.2d 196 (Fla. 1976); Rogers v. Johnson, 326 So.2d 185 (Fla. 1976); Burnsed v. Seaboard Coastline Railroad Co., 290 So.2d 13 (Fla. 1974). Because of the importance of the class action question, and because the trial court ruled Section 711.12(2), Florida Statutes (1975), unconstitutional, we granted certiorari in an unreported order entered September 21, 1976.
The complaint below was filed by Avila South Condominium Association, Inc. (the Association), in its own right and on behalf of the Association members. Membership in the Association, which is a nonprofit corporation charged with managing the Avila South Condominium in Dade County, is limited to owners of the 196 condominium units which comprise the Avila South Condominium. Also named as plaintiffs were four individual members of the Association, who sued in their own right and on behalf of all other persons similarly situated. The three corporate defendants were alleged to have been "owners and developers of the tract, building, and appurtenances submitted to condominium as the Avila South Condominium," and the same corporations were alleged to own certain recreational facilities which they leased to the Association. The complaint alleged that the individual defendants Wolofsky and Schuster *603 had been the "original incorporators and directors of the Association" and had contracted the recreational lease with the corporate defendants on behalf of the Association, but also that Wolofsky and Schuster were officers and directors of the corporate lessors. In eight counts, the complaint assailed the legality of the recreational lease. Of the various theories underlying the several counts of the complaint, half were rejected by the trial court and appealed here; and the defendants cross-assigned as error the failure to dismiss the remaining counts. Before us for decision are questions touching the sufficiency of the entire complaint with the exception of the first count, which has been remanded to the trial court.
In Count II the plaintiffs sought a declaratory judgment as to the ownership of the condominium units, which are leased by the corporate defendants to the Association for recreational purposes. Although when a proper party brings suit, "declaratory judgment is ... an appropriate means for resolution of such a controversy," State v. Florida National Properties, Inc., 338 So.2d 13, 20 (Fla. 1976) (separate opinion of Hatchett, J.), it is a well-established rule that lessees are estopped from denying their lessors' title, during the existence of the relationship of landlord and tenant. See Annot., 87 A.L.R.2d 602 (1963); Annot., 51 A.L.R.2d 1238 (1957).
[A] tenant is estopped to assert that a better title than the landlord's is outstanding in some third person or is in himself. This doctrine, although traceable to the feudal tenures, when the connection between landlord and tenant was much more intimate than it is at present, is not merely technical, but is founded in public convenience and policy, because it tends to encourage honesty and good faith between landlord and tenant. As has been said in this connection, a person entrusted with the possession of property shall not betray that possession.
The doctrine of estoppel of a tenant to deny his landlord's title extends to all species of tenancy, including tenancies at will, and is fully recognized in courts of equity as well as in courts of law. It applies where an agent executes a lease in his own name as lessor, and the lessee is estopped to deny the agent's title. 49 Am.Jur. Landlord and Tenant § 109 (1970) (footnotes omitted).
The property in controversy is leased by the corporate defendants to the plaintiff Association. Without regard to the merits of the dispute as to title, therefore, the second count of the complaint was dismissed as to the Association, on the ground that the Association lacked standing to question the defendants' ownership. See Reibel v. Rolling Green Condominium Association, Inc., 311 So.2d 156 (Fla.3d DCA 1975); Commodore Plaza At Century 21 Condominium Association, Inc. v. Saul J. Morgan Enterprises, Inc., 301 So.2d 783 (Fla.3d DCA 1974).
The Association, which is a corporation not for profit, cannot confer on its members any greater rights as against third parties than the Association itself has. Where a lessee has no standing to sue, any sub-lessee must also lack standing, a fortiori. Just as the rights of stockholders in derivative actions are coextensive with those of the corporation, so here the members' derivative claim for declaratory relief in Count II must fail, because the Association is estopped to deny the defendants' title. The named, individual plaintiffs sued not only as members of the Association, but also in their capacity as unit owners. When viewed as third party beneficiaries under the recreational lease, the unit owners are in no better position, however, because their rights under the recreational lease still flow from the Association's rights. Accordingly, we affirm the dismissal of count two.
The trial court decided that counts three and four stated a cause of action as to the named, individual plaintiffs but ruled that "a class action is not appropriate for the counts [III and IV] sounding in fraud and deceit." Appellees-respondents maintain that Counts III and IV should have been dismissed altogether because the "[p]laintiffs affirmatively accepted the premises" and because it was not alleged in *604 either count that anybody was "precluded from seeing the actual premises prior to closing the purchase." Brief for Respondents, p. 36. The contention that the premises were "affirmatively accepted" goes to the question whether the contracts were subsequently ratified, even if their inducement was fraudulent. Ratification is an affirmative defense to a contract action, however, and should be pleaded as such; it need not be negatived in the complaint. It is also unnecessary, in alleging fraud in the inducement, for the plaintiff to plead that he was "precluded" from discovering the truth as to the misrepresented facts, so long as the complaint alleges reasonable reliance on material misrepresentations of existing fact.[3] We therefore reject these challenges to the sufficiency of Counts III and IV, and we also conclude that count four, in alleging that the defendants perpetrated a fraud "with willful and wanton disregard of the rights of the [p]laintiffs," pleaded an adequate predicate for punitive damages.
The fifth count of the complaint is grounded on Section 711.66(5)(e), Florida Statutes (1975), and the complaint sets forth this portion of the statutory language:
Any grant or reservation made by a declaration or cooperative document, lease, or other document, and any contract made by an association prior to assumption of control of the association by unit owners other than the developer, shall be fair and reasonable.
Plaintiffs allege that the recreational lease is unfair and unreasonable in various particulars, all in violation of Section 711.66(5)(e), Florida Statutes (1975). The trial court dismissed Count V because Section 711.66 was enacted after the lease was entered into, reasoning that the statute was not intended to be retroactive. Alternatively, the trial court ruled that Section 711.66(5)(e) would be unconstitutional, if given retroactive effect. Because we agree that Section 711.66(5)(e) should not be construed to operate retroactively, we do not reach the constitutional question. Division of Beverage v. Foremost-McKesson, Inc., 330 So.2d 143, 145 (Fla. 1976); Williston Highlands Development Corp. v. Hogue, 277 So.2d 260 (Fla. 1973); Overstreet v. Blum, 227 So.2d 197, 199 (Fla. 1969).
In support of the contention that Section 711.66(5)(e) was intended to have retroactive effect, appellants-petitioners rely on certain language in Ch. 74-104, § 19, Laws of Florida, creating Section 711.66 et seq., etc.[4] Appellants-petitioners argue that Section 711.66(5)(e) "was not among those sections specifically deemed not to apply to pre-existing condominium *605 contracts, thereby manifesting a legislative intent that it should apply." Brief for Appellants, p. 9. But a statute "is not to be given retrospective application unless it is required by the terms of the Statute or it is unequivocally implied" Keystone Water Co. v. Bevis, 278 So.2d 606, 608 (Fla. 1973). The title of the enactment did not give notice of retroactivity, see Chiapetta v. Jordan, 153 Fla. 788, 16 So.2d 641, 645 (1944), and the language on which appellants-petitioners rely does not "unequivocally imply" a legislative intent that Section 711.66(5)(e) operate retroactively. See Fleeman v. Case, 342 So.2d 815 (Fla. 1976). In affirming the dismissal of the count alleging violations of Section 711.66(5)(e), we do not preclude the plaintiffs on remand the possibility of stating an amended claim of unconscionability, independent of Section 711.66(5)(e).
In the sixth count, plaintiffs complain of an alleged violation of the homestead exemption provisions of the Florida Constitution. From the pleadings and exhibits, it appears that the Association, which is obligated under the recreational lease, looks in turn to its members, the unit owners, for money with which to pay the lease obligations. The unit owners' obligations to the Association, including their pro rata shares of lease payments, are secured by liens on the units, which were created upon the filing of the declaration of condominium. The effect of these arrangements, appellants urge, is that homestead property is subject to forced sale for failure to pay for recreational facilities, in contravention of the strong state policy in favor of protecting the homestead against certain creditors. In order to avail himself of the homestead exemption, however, a debtor must establish the homestead character of his property as of the time the lien attaches. The complaint in the present case fails to allege facts that would qualify any unit as homestead property, as of the time of the creation of the liens. For that reason, we conclude that Count VI fails to state a claim for relief. In reversing the trial court's denial of the motion to dismiss as to Count VI, we do not decide any other question as to the efficacy of a lien of this kind, however, and direct that plaintiffs be given leave to amend this count on remand.
The seventh count alleges self-dealing by the individual defendants Wolofsky and Schuster, who were the original incorporators and, subsequently, officers and directors of the Association. Wolofsky is also alleged to be "an officer and director of Developer-Defendants FONNIK CORP., and LOSCH CORP.," and Schuster is alleged to serve in the same capacities for Losch Corporation and Kappa Corporation, the third corporate defendant. As officers and directors of the Association, Schuster and Wolofsky are alleged to have contracted the recreational lease between the Association as lessee and the corporate defendants as lessors. The complaint charges that Schuster and Wolofsky "willfully and knowingly entered into the ... [recreational lease] contrary to the best interests of the Association and its individual members ... therefore breaching their obligation of trust as a fiduciary of the said Association."
In support of their contention that the trial court properly dismissed Count VII, appellees-respondents cite our decision in Point East Management Corp. v. Point East One Condominium Corp., 282 So.2d 628 (Fla. 1973) cert. den. 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974), and decisions of the District Court of Appeal, Third District. Commodore Plaza At Century 21 Condominium Ass'n v. Saul J. Morgan Enterprises, Inc., 301 So.2d 783 (Fla.3d DCA 1974); Plaza Del Prado Condominium Ass'n v. GAC Properties, Inc., 295 So.2d 718 (Fla.3d DCA 1974); Wechsler v. Goldman, 214 So.2d 741 (Fla.3d DCA 1968). The Point East case decided that a condominium association could not prevail in an action for rescission of a contract "merely because it arose from the dealings of the developers with themselves while they constituted all of the members of," 282 So.2d at 629, the condominium association and at the same time owned all the stock in the corporation with which the association contracted. As authority for this proposition, the Court cited Lake Mabel Development Corp. v. *606 Bird, 99 Fla. 253, 126 So. 356 (1930), the same case which was held to govern in Fountainview Ass'n, Inc. No. 4 v. Bell, 203 So.2d 657 (Fla.3d DCA 1967) cert. discharged 214 So.2d 609 (Fla. 1968). The plaintiff associations in Fountainview sought not only to avoid a contract between themselves and a developer-controlled corporate lessor, but also to require the individual officers who contracted on behalf of the association to disgorge profits accruing to them under the contracts. Deciding in favor of the developers, the Third District explained:
The defendants contend that because they were the sole officers and directors of the associations at the time the transactions took place, they were not liable to the associations because there were no other members actually belonging to the associations at that time... .
... This is not a case of first impression in Florida. If it were, we might be inclined to the view espoused by the appellants. However, it appears that the Florida Supreme Court opinion cited by the appellee, Lake Mabel Development Corporation v. B[ir]d, supra, disposes of the question.
Because of the great precedential importance which the decision in Lake Mabel Development Corp. v. Bird, supra, has assumed, it deserves close scrutiny, notwithstanding its relative antiquity.
In the course of foreclosure proceedings, Bird was substituted for his predecessor in title, W.H. Marshall, who sought to foreclose on a mortgage given to him by the Lake Mabel Development Corporation (Lake Mabel), as security for a portion of the purchase price of land, which Marshall and the other organizers of Lake Mabel had sold to the corporation. Lake Mabel admitted the indebtedness, but set up as a defense to the foreclosure the fact that Marshall had profited from the sale of land to the corporation he had organized. The Court decided:
There was no error committed in striking that part of the answer averring that complainant and three other promoters had made a theoretical profit of $1,250 per acre for which they received stock in the defendant corporation. There is no averment in the pleadings or showing made by the record that any stock was ever issued or sold by the corporation to the public.

A corporation cannot, while its promoters own all its outstanding stock, avoid in equity a purchase of property sold to it by its promoters at a large profit, represented by stock of the corporation issued to such promoters, since the corporation thus has full knowledge of the facts and the rights of innocent purchasers of stock have not arisen. 126 So. at 358 (emphasis supplied).
The Court did not pass on the "rights of innocent purchasers of stock" and expressly stated that it was not faced with a situation where ownership interests were "ever issued or sold by the corporation to the public."
The Lake Mabel decision should be viewed in the context of principles generally applicable to transactions between corporations and their officers and directors:
[A] director occupies a trust relation not only to the present stockholders, but also to those who may become such in the future, and ... for this reason, where directors have profited in some secret way, stockholders who are subsequently admitted may demand that an account of the profits be made to the corporation... .
Transactions in which a corporate fiduciary derives personal profit, either in dealing with the corporation or its property, or in matters of corporate interest, are subject to the closest examination, and the form of the transaction will give way to the substance of what has actually been brought about. Personal dealings with the corporation or transactions with the corporation in which the director has some personal interest may be avoided, unless good faith and fairness are shown. While occupying such a fiduciary relation, the officers and directors of a corporation are precluded from receiving any personal *607 advantage without the fullest disclosure to, and assent of, all concerned... . 19 Am.Jur.2d Corporations § 1281 (1965) (footnotes omitted).
The Florida rule as to recovery on behalf of the corporation from officers or directors, by a party who later acquires stock, was applied in News-Journal Corp. v. Gore, 147 Fla. 217, 2 So.2d 741 (1941). In that case, R.H. Gore, a minority stockholder, recovered for the benefit of the corporation certain moneys which the other two stockholders had caused themselves to be paid by the corporation; each of the majority stockholders drew a salary from the corporation. The salaries were held to be excessive, and this Court ordered the return of the portion adjudged excess, but only back to the date of Gore's acquisition of the stock.
While reaffirming our decision in Point East, that self dealing by officers and directors of condominium associations, without more, is not actionable, we believe the time has come to reexamine the laconic imprimatur with which we stamped the Third District's decision in Fountainview Ass'n, Inc. No. 4 v. Bell, supra. The Third District there held that a condominium association could not recover from former officers and directors even when they were guilty of undisclosed self dealing "upon inflated terms." 203 So.2d at 658. Insofar as is revealed by the opinion, this decision was based entirely on a misapprehension as to the reach of the Lake Mabel case, as we have undertaken to demonstrate, ante pp. 605-607. Neither the Third District nor this Court articulated any basis in public policy for the Fountainview decision, and it is difficult to conceive of any. Certain public interests may be served by leaving to developers the possibility of self dealing; such flexibility may facilitate financing of some phases of some projects, with resulting economies that can be passed on to the public. But there is absolutely nothing to recommend a rule of law which encourages persons in positions of trust secretly to betray their trust for inordinate personal gain, at the expense of those to whom they owe a fiduciary duty. We now reaffirm our decision in News-Journal Corporation v. Gore, supra, and hold that any officer or director of a condominium association who has contracted on behalf of the association with himself, or with another corporation in which he is, or becomes substantially interested, or with another for his personal benefit may be liable to the association for that amount by which he was unjustly enriched as a result of his contract. However, no director or officer shall be required to return any portion of moneys paid by the association where it is shown that he received the funds with the consent of the association or with the consent of a substantial number of the individuals comprising the association. After careful consideration of the facts in each case, based upon specific findings, the trial judge, in his discretion, shall grant such relief as equity dictates.
The eighth and final count of the complaint alleges a violation of Section 542.05, Florida Statutes (1975), in that the defendants "preclude competitors ... from offering the same or similar [recreational] facilities." In dismissing this count, the trial court concluded "that § 711.64 and its predecessor § 711.121 control specifically over the general provisions of Florida Statutes § 542.05 and § 542.10, and that accordingly, Count VIII fails to state a cause of action." Although Section 711.64 has now been repealed, Ch. 76-222, Laws of Florida, we believe the trial court correctly held that tying recreational facilities to housing is at the heart of the condominium concept, a concept which has been repeatedly sanctioned both by the legislature and by the courts; we affirm the trial court's dismissal of the eighth count.
On remand, the plaintiffs have available the theories stated in counts three, four, and seven, and the possibility of amending counts five and six to state a cause of action. We turn now to question of standing with respect to each of these claims. At the outset we concur with the trial judge that Section 711.12(2), Florida Statutes (1975), and its successor, Section 718.111(2), Florida Statutes (1976 Supp.) *608 constitute an impermissible incursion by the legislature into the exclusive prerogative of this Court to adopt rules for "practice and procedure in all courts." Article V, Section 2(a), Florida Constitution. As so aptly stated by Mr. Justice Adkins concurring in In re Florida Rules of Criminal Procedure, 272 So.2d 65, 66 (Fla. 1972):
Practice and procedure encompass the course, form, manner, means, method, mode, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion. "Practice and procedure" may be described as the machinery of the judicial process as opposed to the product thereof.
Examination of many authorities leads me to conclude that substantive law includes those rules and principles which fix and declare the primary rights of individuals as respects their persons and their property. As to the term "procedure," I conceive it to include the administration of the remedies available in cases of invasion of primary rights of individuals. The term "rules of practice and procedure" includes all rules governing the parties, their counsel and the Court throughout the progress of the case from the time of its initiation until final judgment and its execution. See Kellman v. Stoltz, 1 F.R.D. 726 (N.D., Iowa, 1941).
Measured by the quoted standard we can only conclude that the statutes in question deal with matters of procedure and not substantive rights. Essentially the statutory sections seek to define the proper parties in suits litigating substantive rights. Clearly this has to do with "the machinery of the judicial process as opposed to the product thereof." See cases cited in In re Florida Rules of Criminal Procedure, supra. Accordingly, all portions of Section 711.12(2), Florida Statutes (1975), and Section 718.111(2), Florida Statutes (1976 Supp.) save and except the first two sentences of each are hereby found to be unconstitutional.
However, the peculiar features of condominium development, ownership, and operation indicate the wisdom of providing a procedural vehicle for settlement of disputes affecting condominium unit owners concerning matters of common interest. Therefore, we adopt the substance of the statutory sections herein invalidated as a rule of procedure by amending Fla.R.Civ.P. 1.220 to read as follows:
Rule 1.220. Class Actions
(a) Generally.

When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole.
(b) Condominium Associations. After control of a condominium association is obtained by unit owners other than the developer, the association may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all unit owners concerning matters of common interest, including, but not limited to, the common elements; the roof and structural components of a building or other improvements; mechanical, electrical, and plumbing elements serving an improvement or a building; representations of the developer pertaining to any existing or proposed commonly used facilities; and protesting ad valorem taxes on commonly used facilities. If the association has the authority to maintain a class action under this section, the association may be joined in an action as representative of that class with reference to litigation and disputes involving the matters for which the association could bring a class action under this section. Nothing herein limits any statutory or common law right of any individual unit owner or class of unit owners to bring any action which may otherwise be available.
Cf. Carter v. Sparkman, 335 So.2d 802, 806 (Fla. 1976).
Counts three and four allege fraud, and for that reason fall under the rule of Osceola Groves v. Wiley, 78 So.2d 700 (Fla. 1955), that recovery for fraud on separate contracts cannot be had in a class action. *609 The Association as well was named as plaintiff, but, taken as a whole, the complaint does not fairly allege reasonable reliance, by the Association, as opposed to the individual purchasers, on misrepresentations of existing fact. Neither was the Association alleged to be a party to any of the contracts allegedly fraudulently induced. The Association is therefore authorized to sue only if the fraud claims of the members constitute "matters of common interest." The clear import of Osceola Groves v. Wiley, supra, is that fraud claims on separate contracts are inherently diverse, as a matter of law, because "the demands of the various defrauded parties are not only legally distinct, but each depends upon its own facts ... [and] a choice of remedies is ordinarily presented." 78 So.2d at 702 (citing Note, 1938, 114 A.L.R. 1015, 1019). We therefore conclude that the Association lacks standing with respect to the fraud claims, for much the same reasons that lead us to the conclusion that fraud claims on separate contracts cannot be consolidated into a class action.
Although not grounded on a contract theory, the self-dealing claim in Count VII is nevertheless concerned with a contract to which the Association is alleged to be a party, namely, the recreational lease. As this cause of action has been pleaded, the Association is the only party that may properly bring suit because the allegation, boiled down, is that a fiduciary duty owed to the Association was breached. While the Condominium Act expressly saves "any statutory or common law right of any individual unit owner or class of unit owners to bring any action which," is available independently of the Act, Section 718.111(2), Florida Statutes (1976 Supp.), the named, individual plaintiffs in the present case did not plead any injury to themselves distinct from the injury done the Association.
In the event the unconscionability count is amended to state a cause of action on remand, the Association would have standing again because the Association is alleged to be a party to the lease. The named, individual plaintiffs are also interested as third party beneficiaries under the recreational lease and might be able to state a claim whether as individuals or as a class. With respect to the sixth count, however, there is no possibility of a class action because the homestead status of each condominium unit will depend on facts peculiar to it. Corporations have no homestead exemption, of course, so the Association could not properly raise such a claim.
The judgment is reversed insofar as it sustains count two as to the individual plaintiffs, and insofar as it dismisses count seven, and in dismissing counts five and six with prejudice; the judgment is affirmed insofar as it dismisses counts three and four as to the class and the Association, and insofar as it dismisses count eight as to all parties.
OVERTON, C.J., and BOYD, SUNDBERG and DREW (Retired), JJ., concur.
ENGLAND, J., concurs in part and dissents in part with an opinion.
ADKINS, J., dissents.
ENGLAND, Justice, concurring in part and dissenting in part.
My brother Hatchett has provided a thoughtful and careful analysis of the difficult issues presented in this case. My limited disagreement with his conclusions reflects my view that, in the area of recreation leases, the incremental steps now being adopted are simply inadequate to redress the gross imbalance which exists between condominium developers and unit owners. I would do more, by reversing the trial court's dismissal of counts three and four.[1]
*610 In counts three and four, plaintiffs assert a class action for fraud. I would not bar them from pursuing it. Plaintiffs allege that the developers fraudulently misrepresented to all purchasers of condominium units, for the purpose of inducing them to purchase units in the condominium complex, that a separate clubhouse facility would be built for their benefit. They further allege that the clubhouse was never built.
The time has come, I believe, to acknowledge the possibility that condominium developers in Florida may have spawned a new form of fraud  class fraud by general, public misrepresentations  and to admit that historic rules governing access to the courts are inappropriate to remedy this unique and pervasive problem. I would at least shift the burden of proving up the class by allowing the action and then, if it should develop as a matter of proof by the developers that individual unit owners were not in fact misled by the asserted representations or did not in fact rely on them, the unit owners in that category should simply be dismissed from the class. See Davidson v. Lely Estates, Inc., 330 So.2d 528 (Fla.2d DCA 1976).
NOTES
[1] Section 711.12(2) provides, as follows:

The association, whether or not incorporated, shall be an entity which shall act through its officers and shall have the capability of contracting, bringing suit, and being sued with respect to the exercise or nonexercise of its powers. For these purposes, the powers of the association shall include, but not be limited to, the maintenance, management, and operation of the condominium property. When the board of administration is not controlled by the developer, the association shall have authority and the power to maintain a class action and to settle a cause of action on behalf of unit owners of a condominium with reference to matters of common interest, including, but not limited to, the common elements, the roof and structural components of a building or other improvement, and mechanical, electrical, and plumbing elements serving an improvement or a building, as distinguished from mechanical elements serving only a unit. In any case in which the association has the authority and the power to maintain a class action, the association may be joined in an action as representatives of that same class with reference to litigation and disputes involving the matters for which the association could bring a class action. If not incorporated, the association shall be deemed to be an entity existing pursuant to this act and shall have power to execute contracts, deeds, mortgages, leases, and other instruments by its officers and to own, convey, and encumber real and personal property. Service of process upon the association, if not incorporated, may be had by serving any officer of the association or by serving the agent designated for the service of process. Service of process upon the association shall not constitute service of process upon any unit owner. Nothing herein shall limit any statutory or common law right or any individual unit owner or class of unit owners to bring any action which may otherwise be available in any court.
[2] Section 501.204(1) provides, as follows:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
[3] No issue as to futurity has been raised here. See 37 Am.Jur.2d Fraud and Deceit § 57 et seq. (1968).
[4] Ch. 74-104 § 19 reads, in part:

This act shall take effect October 1, 1974; provided however that nothing contained in sections 711.63, other than 711.63(4), and 711.64, Florida Statutes, shall affect:
(a) Rights established by contract for sale of a unit by a developer to a prospective unit owner prior to July 1, 1974.
(b) A condominium or a cooperative as to which rights are established by contract for sale of a unit in the condominium or cooperative by the developer to a prospective unit owner prior to July 1, 1974.
(c) The form of a lease that would be otherwise subject to the requirements of section 711.63, Florida Statutes, if the lease form is established by contract for sale of a unit in any condominium or any cooperative by the developer to a prospective unit owner prior to July 1, 1974, which lease form may be used in the making of all leases of the leased property and as to such other property that may be added to the leased property in accordance with the terms of the lease;
(d) And provided further that if on October 1, 1974 there are less than six remaining unsold units in a condominium or cooperative in which there have been binding contracts for the sale of other units executed prior to October 1, 1974, then the requirements of 711.69, Florida Statutes, shall not be applicable to the sale or offering of such remaining unsold units; and provided further that nothing contained in section 711.65, Florida Statutes, shall affect a condominium or a cooperative as to which rights are established by contracts for sale of ten percent (10%) or more of the units in the condominium or cooperative by the developer to prospective unit owners prior to July 1, 1974, or as to condominium or cooperative buildings on which construction has been commenced prior to July 1, 1974.
[1] As to count seven, moreover, I would not waste words trying to explain the continued vitality of this Court's decision in the Point East case. I would simply concede that it has been overruled and adopt the dissenting views expressed in that case by Justice Ervin. Aside from the result in Point East, the decision provides a vivid example of the mischief which can result from an improvident exercise of "conflict" jurisdiction where no decisional disharmony exists. See Justice Ervin's dissent.