500 So.2d 331 (1986)
OLD PORT COVE PROPERTY OWNERS ASSOCIATION, INC., Appellant,
v.
E. Llwyd ECCLESTONE, Jr. Appellee.
Nos. 84-510, 84-1236.
District Court of Appeal of Florida, Fourth District.
December 31, 1986.
*332 Rod Tennyson of Powell, Tennyson & St. John, P.A., West Palm Beach, and Larry Klein of Klein & Beranek, P.A., West Palm Beach, for appellant.
Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, and Slawson & Burman, North Palm Beach, for appellee.
PER CURIAM.
Old Port Cove Property Owners Association (POA) appeals a final judgment holding that the developer, Ecclestone, did not breach his fiduciary duty to POA when he sold the development's entire road system to POA but retained for himself a rent-free easement in the road system to allow access to the commercial areas. Also, POA appeals the trial court's award of attorney's fees to Ecclestone. We affirm the trial court's holding that Ecclestone did not breach his fiduciary duty, but we reverse as to the award of attorney's fees.
Old Port Cove was a planned development community that was to be built in phases over a ten-year period. The development was to ultimately include 1,400 residential condominium units, yacht club, marina, swimming pools, tennis club, and commercial areas. As envisioned by the developer, all of these recreational facilities and commercial areas were designed to enhance the value of the condominium units.
Ecclestone was the original developer of the Old Port Cove Development. As part of the planned project, the developer created the Property Owners Association (POA). Old Port Cove contained several different condominium buildings, and each had its own condominium association. The POA was a central organization which provided for the maintenance and management of the entire community.
In 1971, while acting both as the developer and as the president of POA, Ecclestone sold the entire road system of the project to the POA, retaining a rent-free easement in the road system of the development for the benefit of the commercial areas. Ecclestone accomplished this transaction by conveying the road system in trust for his children to The Bank of Palm Beach and Trust Company. The Bank subsequently conveyed the road system to the POA in exchange for a promissory note for $1.95 million and purchase money mortgage on the roads. In order to repay the mortgage, the POA required its members, both present and future condominium owners, to pay a pro-rata share of principal and interest. The commercial areas of the development, which were owned by Ecclestone at the time of the road system sale, were not members of the POA and not required to make the pro-rata payment. Thus, as a result of the easement and because they are not members of the POA, the commercial areas have never had to contribute to the general maintenance of the road system but have nevertheless derived full use and benefit of the system. In addition to this rent-free easement to the commercial areas, Ecclestone also required continued access to allow him to complete the development and sale of the condominium units.
*333 POA contends that the developer breached his fiduciary duty to the POA by requiring it to purchase the project roads and assume responsibility for their maintenance, while excluding commercial areas which the developer owned from any responsibility in the road maintenance.
We agree with the trial court's finding that the developer did not breach his fiduciary duty to POA. The standard for examining transactions between a developer and a property owners' association is based on corporate law principles of fiduciary duty. In Avila South Condominium Association v. Kappa Corporation, 347 So.2d 599 (Fla. 1977), the Florida Supreme Court held:
[A]ny officer or director of a condominium association who has contracted on behalf of the association with himself, or with another corporation in which he is, or becomes substantially interested, or with another for his personal benefit may be liable to the association for that amount by which he was unjustly enriched as a result of his contract. However, no director or officer shall be required to return any portion of moneys paid by the association where it is shown that he received the funds with the consent of the association or with the consent of a substantial number of the individuals comprising the association.
Avila, 347 So.2d at 607.
The Avila opinion is premised upon Florida corporate law principles that a director has the duty to perform his duties "in good faith, in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances." Fla.Corp.Code, § 607.114(4), Fla. Stat. (1985). Additionally, Florida corporate law provides that when confronted with director conflicts of interest, such as those alleged here, the contract will be upheld providing it is "fair and reasonable as to the corporation at the time it is authorized." Fla.Corp.Code, § 607.124(1)(c), Fla. Stat. (1985). Thus, to uphold the contract, the road system sale must have been reasonable at the time the POA and the developer entered into the contract.
It is clear from the applicable statutes and the Avila decision that self-dealing per se is not actionable. The court in Avila recognized that developers need some degree of flexibility in order to facilitate the financing of condominium projects which will ultimately benefit the purchasers of the development after the developer has realized his fair profit. Certain public interests may be served by leaving to developers the possibility of self dealing, such flexibility may facilitate financing of some phases of some projects, with resulting economies that can be passed on to the public. Avila, 347 So.2d at 607. Thus, to prevail under Avila, the plaintiff must show that a director of the association contracted with himself, or a corporation under his control, for his personal benefit, and that he received unjust enrichment as a result of the transaction. In addition, the plaintiff must show that the director received funds without the consent of the association or of a substantial portion of the members of the association. Id.
Furthermore, it is the trial judge, after careful consideration of the facts in each case and based upon specific findings, who has the discretion to decide whether an officer of a condominium association (who has contracted on behalf of the association with himself or with a corporation for his personal benefit) has breached his fiduciary duty to the members of the association. Id. at 599.
In the instant case, the trial judge made the following findings of fact, all of which are supported in the record by substantial, competent evidence:
1. In approximately 1970 or 1971, the defendant, Ecclestone, conceived the creation of a condominium development involving approximately 1400 units encompassing a total community atmosphere with its amenities blending to the waters of Lake Worth and the Atlantic Ocean. Admittedly, the defendant owned all the land involved in the development and his intentions were profit motivated.

*334 2. The undertaking was unique and staggering, envisioning multiphased development transcending a decade which was extremely complex.
3. At the time this law suit was filed in 1980 the development was most successful to all parties concerned.
4. To accomplish the defendant's ultimate goal in this development, it became necessary to create multiple corporations, joint ventures and condominium entities; many of which were reconstructed during the course of the phased development.
5. During the planning, creation and development stages many problems arose concerning finance, governmental limitations and regulations on the local, state and federal levels and decisions were required to be made, without which, the development would never have come into fruition.
6. The decision which has generated this law suit surrounds the problem of ingress and egress by the developer over the property dedicated to condominium ownership, not only during its phased development, but perpetually to commercial areas owned and controlled by the defendant, which areas were retained by the defendant, and not submitted to condominium ownership. It was never the defendant's intent to gratuitously convey his right of ingress and egress and then subsequently repurchase them for monetary consideration.
The problem of the defendant's ingress and egress was of no consequence so long as he retained full ownership to the private road system he created serving the condominium area. This road system was purposely retained as private ownership and not dedicated to the public so as to ensure privacy to the ultimate users of the condominium property. If the road system was to be conveyed directly to the unit owners, the price of their individual unit should reflect a proportionate cost of the roadway system; yet, retaining the reservation of ingress and egress.
Ultimately, the defendant made the decision which has generated this litigation. He conveyed, by special warranty deed, the roadway system to the Bank of Palm [Beach] & Trust Company, as Trustee, on May 14, 1971 and in that deed is contained the language set forth as follows:
"Subject also to the perpetual rent free use of all property, either granted by deed or easement, by .. . E. Llwyd Ecclestone, Jr., ... and their respective invitees, successors and assigns."
7. The bank then conveyed, on July 29, 1971, to the plaintiff, Old Port Cove Property Owners Association, Inc., the roadway system and in its legal description was contained the same reservation of the perpetual rent free use of all property, either granted by deed or easement, etc.
8. The consideration paid by the POA to the bank was $1,950,000. secured by a promissory note and mortgage, which mortgage had the same language contained within it. The beneficiaries of the trust are the defendant's children.
9. Prior to the execution of the deed and mortgage set forth above, the defendant controlled the POA and the matter was fully discussed and approved. It is from this conduct and decision this law suit emanates, as the plaintiff contends the defendant violated his fiduciary relationship to the POA by self dealing.
10. The original deed by the defendant to the bank, as trustee, and the bank's deed to the POA, and the mortgage executed by the POA, all of which were recorded in the public records, together with the intent of the parties in the execution of those documents, reserved unto the defendant the easements in question. The reserved easement is referred to in the condominium documentation which was made a public record.
11. The land involved in the condominium is not platted but described by metes and bounds and financial institutions, when lending money to the defendant for the development of the project, insisted upon the execution of an additional (repeat) easements insuring the financial institution *335 if it be called upon to foreclose upon the property which was the security for their loan, it, the financial institution, would have a right of ingress and egress. When called upon, the defendant, while remaining in control of the POA, did execute these easements.
12... .
13. The decision and conduct of the defendant in the reservation of the easements in question and their re-execution as required by financial institutions so as to make available funds to complete this phased project were for the best interests of all parties concerned, including the POA with its very limited membership at the time of the conduct; for, without the easements the financial institution refused to loan the money to finance the entire project which would have resulted in its failure, rather than its existing success.
14. There existed upon the part of the defendant, no secrecy, no fraud, nor inordinate profit earned or unjust enrichment, from his conduct and there was no breach of his fiduciary relationship to the plaintiff, POA.
In addition, the final judgment contains the following statement:
Plaintiff's counsel has urged upon the court in resolving the matter under consideration, the court strictly and narrowly interpret the defendant's conduct only as it relates to the POA and no other entity, while defense counsel urges such an interpretation in isolation is totally unreasonable considering the complexity of the development of this project and the role the various entities play in bringing such projects to fruition. They contend that the plaintiff's position would necessarily bring to an end, or greatly and unreasonably deter condominium development and ownership in the State of Florida. The court is impressed with the approach expounded by defense counsel; for, in today's complex, social, economic, business and legal communities reasonableness must be the standard, rather than the extreme. That is why the Legislature has provided in the statutes under consideration that if the person performs his duties in good faith, in a manner reasonably believed by him to be in the best interest of the corporation and with such care as an ordinary prudent person in a like position would use under similar circumstances, and if the transaction is fair and reasonable to the corporation at the time it is authorized, no misconduct or actionable breach of fiduciary relationship has occurred. (See F.S. 607.111(4), 607.124(1)(c)).
In essence, the trial court found that the developer acted reasonably in this case and we agree. The sale of the road system was fully discussed and approved by the POA at the time of the transaction. Additionally, the sale occurred while the project was in the early stages of development and the developer felt it necessary for him to retain an unlimited right of ingress and egress to enable him to develop the commercial areas and complete the sale of the individual condo units.
There is substantial, competent evidence that the developer did in fact create a community in Old Port Cove. He built the marina, swimming pools, tennis courts, and commercial areas to attract people to the development and to enhance the value of the condominium units. Ecclestone chose to make his profit by building a road system through the development and then selling it to the POA. He actually made a small profit on the sale of the condominium units. Profit motive alone, however, does not constitute a breach of the fiduciary duty. As stated in Avila, there must be unjust enrichment by the developer as a result of the transaction. There is no substantial, competent evidence that the developer was unjustly enriched by the sale. In fact, the testimony reveals that the values of the condominium units had actually been enhanced by the recreational and commercial area development to a greater degree than comparable condominium units. This was a new development and the sale of the road system was just one of many decisions made to get this venture off the *336 ground. Not only were the easements necessary for the developer, they were required by financial institutions in order to secure loans to finance the completion of the project. Once completed, the commercial areas enhanced the value of other properties within the development, including the condo units owned by members of the POA. Failure to secure the financial loans might have resulted in the failure of the entire project, therefore, in the furtherance of the development, the easements were executed.
Based on the foregoing, we find that there is substantial competent evidence in the record to support the trial court's conclusion that the developer did not breach his fiduciary duty. There is no indication that the developer acted unreasonably considering the complexity of the development. The developer acted in what he felt would be the best interest of the project as a whole. We affirm the trial court's decision that the developer did not breach his fiduciary duty to the POA.
The trial court awarded Ecclestone attorney's fees based on the indemnification provision of the Articles of Incorporation of the POA. We reverse. In Penthouse North Association v. Lombardi, 461 So.2d 1350 (Fla. 1984), the supreme court reversed an award of attorney's fees to a developer based on a similar provision in the articles of incorporation of the condominium association. The supreme court held that chapter 607 did not apply to nonprofit corporations and that section 607.028, making the statute applicable to nonprofit corporations, could not apply to lawsuits initiated before the section's 1982 effective date. Although the POA joined the lawsuit after the effective date of the statute, the actual lawsuit was filed prior to the effective date.
Additionally, the court in the Penthouse opinion cited policy reasons for denying attorney's fees which we find persuasive. That court reasoned that giving effect to such indemnification provisions would be contrary to allowing a cause of action for breach of fiduciary duty by a developer. The court cited the following reasoning from this court's opinion in Century Village, Inc. v. Chatham Condominium Associations, 387 So.2d 523, 524 (Fla. 4th DCA 1980):
Accepting the lessor's contention would amount to accepting the incongruous theory that although the appellees [condominium associations] may be successful in their litigation, they would nevertheless have to satisfy their own judgment in addition to paying the lessor's costs. The law will not sanction such an anomaly.
Penthouse, 461 So.2d 1353.
We are convinced that the reasoning of Penthouse and Century Village applies to the facts of this case. Consequently, the award of attorney's fees to Ecclestone is reversed.
AFFIRMED IN PART AND REVERSED IN PART.
GUNTHER, J., and BOARDMAN, EDWARD F., Retired, Associate Judge, concur.
GLICKSTEIN, J., concurs specially with opinion.
GUNTHER, J., did not participate in oral argument but has reviewed the presentation made at that proceeding.
GLICKSTEIN, Judge, concurring specially.
Appellee in this case is a land developer in Palm Beach County. Every busy county in Florida  before and since air conditioning and insecticides  had and has such developers; and the question in most of the current purchaser v. developer cases is whether the latter, in taking risks and exercising imagination, not only made a profit from but also exploited the former. The presence or absence of exploitation is the issue here.
Florida's history of land speculation in the 20's and development in the 50's through the present has, in the opinion of the writer, resulted first in legislation to encourage growth and only then in legislation *337 to police it. Condominium development is no exception. The recreation lease came with the condominium; and many a developer/lease holder could say to his northern relatives about Florida what the salesman, Willy Loman, in Arthur Miller's tragic play was told by his older brother, Ben, about Alaska, to the effect:
I went into that jungle when I was 21; And when I came out, by God, I was rich!
Unit owners, not themselves without investments and careers in business in states other than Florida, honor their own profits as much as Florida's land developers honor theirs. However, for many unit owners the condominium is the first experience at being part of an association that governs so much of how an individual and his or her neighbors live. As a result, the individual's problem may now be the association's problem. If the individual and association have been exploited by the developer, the courthouse is the appropriate place for relief.
I am not dissenting on the first point involved here, although the trial court did not satisfactorily answer the question in my mind as it relates to paragraph 5(d) of the amended complaint. The final judgment does not address it. I am affirming the trial court, although there is record evidence of the benefit to appellee from security, because there is not that compelling proof that would require a reversal, given the reality that we are not trial judges who weigh the evidence, but appellate judges who review it.
Appellee, having originally purchased the raw land, brought in a joint venturer. The new joint venturer wanted to offset the venture's risk by profiting, not only from the sale of individual units, but also from a recreation lease. Appellee, Ecclestone, demurred, opting for additional profit from the sale of the development's road system for $1,950,000. The first practical effect of the sale to the individual unit owner, because of the mortgage involved in the conveyance was that he had to pay $2,000. The second practical effect, which is what the lawsuit is about, is that the venturer, Ecclestone, also owned the yacht club, marina, tennis courts and shopping center within the development, and the conveyance of the road system reserved "perpetual rent free use" of the system. It is this latter aspect which is the claimed unjust enrichment.
Appellant points out that the commercial properties represent 38.6% of the entire development property. The record reveals evidence, in response to that argument, that the joint venture had made a profit of 9 1/2% on the development's total sales of $34,000,000, based on a profit of $1,282,000 on unit sales and $1,950,000 on the sale of the road system; and that South Florida developers look for a profit of 20 to 25 percent.
A professional engineer testified for appellee that the impact of nonresidential traffic on the roadway was 11.8%, which he termed "really insignificant," appellants not being burdened with any additional cost for the road system as a result of the non residential traffic. Appellant's witness testified that 31% of traffic was to the commercial areas  including the 11.8% nonresidential traffic. The road system must be resurfaced every eight to ten years at a cost of $10,000. The present value of the cost of resurfacing the roadway system over the next twenty years is $26,286.17.
Appellant does not contest the purchase price of $1,950,000 for the road in question; yet it ties its entire theory of recovery to the conveyances of the road and the reservation of rent free use by the grantor, who owned the commercial properties at the time. I could better understand appellant's claim had it been based upon gouging or overreaching in the purchase price of $1,950,000. Perhaps that was the same problem the trial court had with the case. The obligations of the purchasers with respect to the purchase were made known in a variety of ways, written and verbal, to the purchaser.
Appellant argues that its annual budget is $250,000, of which security is $135,000; and that appellee got a free ride at the expense of the corporation to which he *338 owed a fiduciary duty. It asks for damages in excess of $1,000,000.
Appellee's brief recites that appellee made contributions of $462,779 towards appellant's expenditures in the five years that he had an interest in the development. Appellee testified these were voluntary because of a desire to provide the unit owners with the services and security necessary to have a successful project. Appellee's successor in the commercial properties contributed another $110,000. Appellee further argues that his decisions resulted in lower prices on the condominium units, lower rentals for the boat slips, lower membership charges in the yacht club and less for the road mortgage.
Assuming that I disagree with the trial court's choice of words or explanation of its theory for turning the association down, I  for one  fail to find that conspicuous laundry list of facts and figures which would lead me to say that the trial court so misconstrued the evidence  to which the briefs allude  that it should have concluded exploitation had occurred, resulting in unjust enrichment.
I hope the legislature will eliminate developer controlled associations in the forthcoming session as a means of development. Imaginative entrepreneurs with creative ingenuity will survive and succeed without the self-dealing device inherent in these associations that they create. Their ability to hold on or bounce back reminds the writer of the vintage cartoon which depicts two executives of the Acme Toy Company pointing some toy weapon towards the sidewalk from their office above. One is saying to the other:
You call this a `Death Ray'? It doesn't even slow 'em up!
If entities uncontrolled by developers are not to be required, one alternative is to create legislatively a presumption of overreaching and unjust enrichment if the developers are going to use developer-controlled associations as a device for their success. I have to believe that the creative lawyers, unit owners, lenders and entrepreneurs of this state can recommend legislation to avoid the use of these situations created by developer controlled associations which then become unit owner controlled associations. In the absence of change, claims of self-dealing will continue to be decided ad hoc.
I concur with the majority's analysis and conclusion on the issue of the attorney's fee.