577 So.2d 1341 (1990)
Maurice P. BEEMAN, Individually, and As Trustee, and Valle Beeman, His Wife, Appellants/Cross-Appellees,
v.
ISLAND BREAKERS, A CONDOMINIUM, INC., Appellee/Cross-Appellant.
No. 88-3071.
District Court of Appeal of Florida, Third District.
June 26, 1990.
Rehearing Denied May 14, 1991.
*1342 Shapiro, Leder, Breitner & Taplin and Robert Shapiro and Paul D. Breitner, Miami, for appellants/cross-appellees.
John T. Longino, Coral Gables, for appellee/cross-appellant.
Before BASKIN, FERCUSON and COPE, JJ.
COPE, Judge.
Maurice P. Beeman, individually and as trustee, and Valle Beeman appeal a final judgment declaring void a 99-year recreational lease between the Beemans and Island Breakers, A Condominium, Inc. The trial court found that the escalation provisions of the lease render the lease void upon commencement of the escalator term in 1991 and declared the lease void as of that date. The Beemans request reversal *1343 on various grounds while Island Breakers, by cross-appeal, requests a determination that the lease is void instanter. We affirm in part and reverse in part.
Maurice Beeman controlled Beeman-American Corporation which, with other companies, developed the Island Breakers condominium on Key Biscayne, Florida. In 1971 Beeman-American filed a declaration of condominium with respect to the property. The declaration was signed by Maurice Beeman as president of the company. The same date, Maurice Beeman, individually and as trustee, joined by his then wife, Valle Beeman, entered into the recreation lease as lessors, with the condominium association as lessee. Beeman acted as trustee on behalf of himself and his wife, as well as several other individuals who were involved in the development of the project.
The recreation lease covered a swimming pool in the Island Breakers project. The land on which the swimming pool was located was acquired for a cost of approximately $45,000. The initial rental rate was established at $21,600 per year, which was to remain constant until January 1, 1991. In 1991, and every ten years thereafter, the rent is to be adjusted in accordance with the consumer price index, using 1970 as the base year.
As of the time of the bench trial below, the first seventeen years of the lease had expired. Projecting future rental rates based on the first seventeen years, the trial court found that with the escalator, the Beemans would receive in excess of $200 million of rentals under the lease. By contrast, without the escalator, the rentals under the recreation lease would amount to approximately $2 million, of which the Beemans had already received nearly $400,000. The trial court found the $200 million in escalated rent to be unconscionable, and found that the recreation lease contained other unconscionable features as well. The court also found that the pending escalation in rent had created difficulties in resale of units and had depressed the prices when compared to otherwise similar condominiums nearby. The trial court found that the lease would become unconscionable upon escalation of the rent in 1991 and declared it void as of that time.
The Beemans initially contend on this appeal that the challenge to the lease is time-barred. They assert that a cause of action for unconscionability was recognized in Avila South Condominium Association, Inc. v. Kappa Corp., 347 So.2d 599, 605 (Fla. 1977), and that the limitation period commenced to run on March 31, 1977, the date of the decision. The trial court disagreed. It found as a fact that the amount of rental escalation could not be ascertained until the date of escalation drew near, and that the association acted promptly upon ascertaining the magnitude of escalation here involved.
To begin with, the Beemans' position that the limitation period runs from the date of the Avila South decision was expressly rejected by the Florida Supreme Court in Penthouse North Association, Inc. v. Lombardi, 461 So.2d 1350, 1351-52 (Fla. 1984). The date of accrual of the cause of action for unconscionability is to be decided without reference to the date of the Avila South decision. The appropriate inquiry is to determine, under ordinary principles applicable to statute of limitations questions generally, when the cause of action accrued.
In Penthouse North a condominium association sued its directors for an alleged breach of fiduciary duty with respect to a rent escalation clause in a condominium recreation lease. The suit was brought thirteen years after execution of the agreement, but before the escalated rent was demanded. The supreme court held that "the last element of the association's cause of action, damages, occurred no earlier than either when the association received notice that the rent escalation clause would be enforced in 1979 or when the lessors actually demanded the escalated rent in 1981." Id. at 1352. The court reasoned that "the obligation to pay rent is a contingent *1344 one which becomes an enforceable debt only as the rent is earned through the lessee's use of the property... . A statute of limitation does not commence to run until the cause of action accrues." Id. (citation omitted). The court went on to say that although the alleged wrong took place in 1966, "[t]he harm, or damages, did not materialize until the escalated rent was demanded. In this case the association timely filed this action upon notification of the lessors' intent to escalate the recreation lease rent. If anything, the action was premature rather than tardy." Id. (emphasis added). In the present case, as in Penthouse North, the action was "[i]f anything, ... premature rather than tardy," id. at 1352, for Island Breakers elected to file a declaratory judgment action prior to the escalation date.[1]
The Beemans next contend that the action is barred under the doctrines of accord and satisfaction, and release, because of a litigation settlement and general release given by Island Breakers to the Beemans in 1973. There was substantial competent evidence to support the trial court finding that the 1973 dispute involved a wholly distinct issue and that the accord and satisfaction did not extend to the issues here involved. There was also substantial competent evidence to support the findings that the release was executed by the association before the association was turned over to the unit owners, and therefore is not binding on the present association.[2] Finally, the release affected claims up to the date of execution of the release; as already explained, the cause of action with respect to escalation accrues when the escalation occurs, which in the present case was substantially after the release was executed.
The Beemans next contend that the trial court erred by applying section 718.122, Florida Statutes (1987), to the instant lease. They strenuously argue that this amounts to an impermissible retroactive application of legislation so as to impair the obligation of contract with respect to the previously entered into lease. In so arguing they rely on Condominium Association of Plaza Towers North, Inc. v. Ploza Recreation Development Corp., 514 So.2d 381 (Fla. 3d DCA 1987), aff'd, 557 So.2d 1356 (Fla. 1990).
The Beemans' argument is misplaced. Florida law recognizes at least two distinct avenues to challenge a condominium recreation lease containing an escalator clause. First, Florida allows a challenge to be brought on the ground that the lease, or a term thereof, is unconscionable *1345 under ordinary common law principles. See Steinhardt v. Rudolph, 422 So.2d 884, 889 (Fla. 3d DCA 1982), review denied, 434 So.2d 889 (Fla. 1983); see also Avila South Condominium Ass'n v. Kappa Corp., 347 So.2d at 605. Under this approach it is necessary to prove as a factual matter that the lease, or a provision thereof, is unconscionable. A claim for unconscionability may be brought with respect to any recreation lease, regardless of when entered into, including leases executed prior to the 1977 decision in Avila South. See Penthouse North, 461 So.2d at 1351.
The second approach is to rely on the statute now codified as section 718.4015, Florida Statutes (1989), which declares that rent escalation clauses in condominium leases are void. Under this approach there need be no independent proof of unconscionability, since the legislation outlaws such clauses. The critical question under section 718.4015 and predecessor statutes,[3] however, is whether the statutory proscription applies retroactively to leases entered into prior to the effective date of the legislation. The instant case involves both approaches, but each must be treated separately.
As originally filed, the Island Breakers' action proceeded solely under the first theory and requested a declaratory judgment that the recreation lease was unconscionable. As stated in Steinhardt v. Rudolph, under well settled principles of Florida law, "an unconscionable contract or an unconscionable term therein will not be enforced by a court of equity." 422 So.2d at 889 (emphasis added).
In connection with its assertion of unconscionability, Island Breakers invoked section 718.122, Florida Statutes (1987). That statute establishes a presumption of unconscionability with respect to condominium recreation leases (or other condominium common facility leases) if certain criteria are met.[4] The trial court relied, in part, on section 718.122 in reaching its decision.
Island Breakers argues that since section 718.122 was enacted in 1977, there *1346 is an impairment of the obligation of contract if the statute is applied to the instant recreation lease, which was executed in 1971. We disagree. The legislation merely created a rebuttable presumption to assist the courts in adjudicating common law claims of unconscionability as authorized by the decision in Avila. The legislation specifically indicates that it "is remedial and does not create any new cause of action to invalidate any condominium lease, but shall operate as a statutory prescription on procedural matters in actions brought on one or more causes of action existing at the time of the execution of such lease." Id. § 718.122(2). The presumption is rebuttable, and failure of a lease to contain all of the enumerated elements neither precludes a determination of unconscionability nor raises a presumption of unconscionability. Id. In short, the invocation of the statutory presumption in connection with the common law cause of action did not impair the obligation of contract with respect to the recreation lease.
Turning to the merits, the Beemans contend that the trial court erred in finding the lease unconscionable. That contention need not long detain us. There is substantial competent evidence to support the trial court's findings that the original 99-year base rental of $2 million would escalate to over $200 million as a result of the escalator clause. The amount is plainly unconscionable, even without regard to the trial court's findings that various of the other criteria of section 718.122, Florida Statutes, were also met by the lease.
On the eve of trial the legislature enacted Chapters 88-148 and 88-225, Laws of Florida, which created section 718.4015, Florida Statutes (Supp. 1988). Portions of section 718.4015 were transferred from subsection 718.401(8), Florida Statutes (1987), which had for some years "declared that the public policy of this state prohibits the inclusion or enforcement of escalation clauses in land leases or other leases or agreements for recreational facilities, land, or other commonly used facilities serving residential condominiums, and such clauses are hereby declared void for public policy," id., including escalation clauses tied to the consumer price index. Id.[5]
The 1988 legislation added a proviso that it would be applicable, among other things, to contracts entered into prior to June 4, 1975.[6] The 1988 legislation provided, however, that
The application of subsection (1) [the proscription against escalation clauses] to contracts entered into prior to June 4, 1975, may not divest the parties of any benefits or obligations arising from the escalation of fees prior to October 1, 1988, but only prohibits further escalation of fees pursuant to the escalation clauses, on or after October 1, 1988.
§ 713.4015(2), Fla. Stat. (Supp. 1988). In the final judgment the trial court relied on the 1988 legislation as an alternative ground for its decision.
The Beemans contend that the trial court erred procedurally and substantively by considering the 1988 legislation. The Beemans say that the case was already at issue and awaiting trial when the statutes were passed, that the statutes were never pled, and that the statutes should not have been applied by the trial court. From a substantive standpoint, the Beemans argue that the 1988 legislation is unconstitutional insofar as it applies retroactively to the lease at issue here.
We do not reach the Beemans' contentions on the 1988 legislation. We have already sustained the trial court's determination under common law principles that the escalation clause in the subject lease is unconscionable and may not be enforced. Since section 718.4015 is merely an alternative *1347 avenue to reach the same destination, we need not determine the merits of the Beemans' arguments on that point.[7]
We do conclude, however, that the remedy fashioned by the trial court should be modified. The trial court found the lease would become unconscionable at the time the escalation took effect. It specifically declined to find the un-escalated lease to be unconscionable. Since Steinhardt holds that equity will not enforce either an unconscionable contract, or an unconscionable term thereof, 422 So.2d at 889, and since the offending portion of this contract is the escalation clause, we conclude that the escalation clause should be held void but that the underlying lease with the existing base rental rate should not be disturbed.
By cross-appeal Island Breakers argues that the entire lease is unconscionable. That was a disputed factual issue resolved against Island Breakers below. As there is substantial competent evidence to support the trial court's conclusion, we do not disturb the court's ruling on that point.
Affirmed in part, reversed in part, and remanded with instructions to modify the final judgment to declare void and unenforceable the escalation clause of the lease.
NOTES
[1] Although we need not decide the point, under Penthouse North it appears that the present cause of action accrues on the date of a demand for the escalated rent. The alternative dates considered in Penthouse North involved the possible alternative dates for the accrual of a cause of action against the directors for breach of fiduciary duty based on the entry into the lease containing the escalation clause. In considering one of the two alternatives, the date of the demand for rent, the court relied on De Vore v. Lee, 158 Fla. 608, 30 So.2d 924 (1947). Both Penthouse North and De Vore reasoned that the obligation to pay rent becomes an enforceable debt only as the time for payment arrives. 461 So.2d at 1352; 158 Fla. at 611, 30 So.2d at 926.

Even if notification of intent to escalate the rent is a permissible alternative, the cause of action in the present case had not accrued at the time the declaratory judgment action was brought. First, there was no such notification. Second, under the logic of Penthouse North, the notification must be with respect to a specific escalation amount so that damages can be ascertained. For purposes of the present cause of action, in other words, a statement of generalized intent to rely on the escalation clause at some date in the future is not sufficient to cause the accrual of the cause of action.
[2] It is also true, as the trial court found, that as of the date of execution of the release, Avila South had not been decided, and the cause of action could therefore not have been released or bargained away in 1973. The trial court's point here was not that the cause of action accrued at the time of decision of Avila South, but rather that in ascertaining the intentions of the parties to the settlement and release, the parties did not have in contemplation the release of a cause of action which had not yet been recognized. See Burleigh House Condominium, Inc. v. Buchwald, 368 So.2d 1316 (Fla. 3d DCA), cert. denied, 379 So.2d 203 (Fla. 1979), overruled in part, Penthouse North Ass'n, Inc. v. Lombardi, 461 So.2d at 1351-52.
[3] Chapters 88-148, section 7, and 88-225, section 2, Laws of Florida, transferred (with amendments) what was previously subsection 718.401(8), Florida Statutes (1987), to a newly created section 718.4015, Florida Statutes (Supp. 1988). The predecessor to subsection 718.401(8) was section 711.231, Florida Statutes (1975).
[4] The statute provides:

(1) A lease pertaining to use by condominium unit owners of recreational or other common facilities, irrespective of the date on which such lease was entered into, is presumptively unconscionable if all of the following elements exist:
(a) The lease was executed by persons none of whom at the time of the execution of the lease were elected by condominium unit owners, other than the developer, to represent their interests;
(b) The lease requires either the condominium association or the condominium unit owners to pay real estate taxes on the subject real property;
(c) The lease requires either the condominium association or the condominium unit owners to insure buildings or other facilities on the subject real property against fire or any other hazard;
(d) The lease requires either the condominium association or the condominium unit owners to perform some or all maintenance obligations pertaining to the subject real property or facilities located upon the subject real property;
(e) The lease requires either the condominium association or the condominium unit owners to pay rents to the lessor for a period of 21 years or more;
(f) The lease provides that failure of the lessee to make payments of rents due under the lease either creates, establishes, or permits establishment of a lien upon individual condominium units of the condominium to secure claims for rent;
(g) The lease requires an annual rental which exceeds 25 percent of the appraised value of the leased property as improved, provided that, for purposes of this paragraph, "annual rental" means the amount due during the first 12 months of the lease for all units, regardless of whether such units were in fact occupied or sold during that period, and "appraised value" means the appraised value placed upon the leased property the first tax year after the sale of a unit in the condominium;
(h) The lease provides for a periodic rental increase based upon reference to a price index; and
(i) The lease or other condominium documents require that every transferee of a condominium unit must assume obligations under the lease.
§ 718.122(1), Fla. Stat. (1987).
[5] The statute originated as section 711.231, Florida Statutes (1975). Ch. 75-61, § 2, Laws of Fla. It was transferred in amended form to section 718.401(8), Florida Statutes (Supp. 1976) by chapter 76-222, Laws of Florida. See generally Fleeman v. Case, 342 So.2d 815 (Fla. 1976).
[6] June 4, 1975 was the effective date of section 711.231, Florida Statutes (1975). See ch. 75-61, Laws of Fla.; see also supra note 5.
[7] There is a very substantial case to be made that the lessors in this case have effectively agreed to be bound by amendments to the Condominium Act. See Angora Enterprises, Inc. v. Cole, 439 So.2d 832 (Fla. 1983), cert. denied, 466 U.S. 927, 104 S.Ct. 1710, 80 L.Ed.2d 183 (1984). The declaration of condominium incorporates the provisions of the Condominium Act as amended from time to time. Article XXIV of the declaration of condominium expressly incorporates the signed recreation lease into the declaration; Article XXIV also contains specific provisions for the enforcement of the recreation lease. The effect of the incorporation of the lease into the declaration of condominium is to have the provisions of the lease run with the land and to have each of the condominium unit owners take their units subject to the terms of the lease as well as the declaration of condominium. Where the lessors invoke the benefits of the declaration of condominium, the lessors must also accept its burdens: here, the condominium declaration which confers benefits on the lessors also indicates that the declaration will be governed by the Condominium Act as amended from time to time.

We do not reach Island Breakers' contention that Maurice Beeman's signature of the declaration of condominium as President of Beeman-American, and his signature of the recreation lease individually and as trustee is, without more, sufficient to indicate an intention that the recreation lease be governed by the Condominium Act as amended from time to time. Compare Angora Enterprises, Inc. v. Cole, 439 So.2d at 834 with Association of Golden Glades Condominium Club, Inc. v. Security Management Corp., 557 So.2d 1350, 1354-55 (Fla. 1990) and Cove Club Investors v. Sandalfoot South One, Inc., 438 So.2d 354 (Fla. 1983).