78 So.2d 700 (1955)
OSCEOLA GROVES, Inc., a Florida corporation, and C.J. Gonterman, Petitioners,
v.
Verna B. WILEY, a widow, and Bessie E. Duncan, a widow, on behalf of themselves and all others similarly situated, Respondents.
Supreme Court of Florida. Special Division A.
January 28, 1955.
Rehearing Denied February 21, 1955.
*701 Paty, Downey & Paty, West Palm Beach, for petitioners.
Ira E. Billingham, Coral Gables, and Redfearn & Ferrell, Miami, for respondents.
DREW, Justice.
Petitioners were defendants in the trial court. They moved to dismiss plaintiffs' complaint urging that no cause of action for equitable relief was stated and that the suit was not a class suit. The court entered an order on October 13, 1954 overruling the motion to dismiss, denying application for appointment of a receiver and postponing until trial the question of whether the suit should be treated as a class suit. Defendants seek certiorari to review that part of the order which denied the motion to dismiss and deferred ruling on the question of class suit.
Material allegations of the complaint are as follows: Defendant Osceola Groves, Inc. is the alter ego of the defendant C.J. Gonterman and was organized by him and used for the purpose of defrauding plaintiffs and others similarly situated. The corporation subdivided about 394 acres of land into one acre units and sold these units for $1,000 each to numerous persons each of whom signed similar contracts of sale and lease agreements. Each plaintiff is the owner of units purchased under this scheme by contract from the corporation. Plaintiffs bring the suit as a class suit on behalf of themselves and all others similarly situated, and "Said persons constitute a class having a common or general interest in the subject matter of this suit, and they are so numerous as to make it impracticable to bring them all before the court, and for that reason, the plaintiffs sue on behalf of all, as allowed by the 1954 Florida Rules of Civil Procedure, rule 3.6."
In the sale contracts of the units of land the corporation promised the plaintiffs to plant each tract with citrus trees, to replace any trees that may die in planting, to cultivate and maintain the trees, and to provide for marketing of the crops. In ninety-nine year leases executed simultaneously with the contract of purchase, the plaintiffs each agreed that the land units should be under control of the defendant corporation for ninety-nine years. In these leases the corporation agreed to maintain the units in keeping with good husbandry and to market the crops, to keep separate accounts for each unit and to make annual reports, to pay to the owner of each unit "80% of the earnings of said property" and to retain "20% of the earnings" for its services in connection with the land. Defendants abided by the agreements until about 1948. Thereafter defendants breached the so-called lease agreements in that they fraudulently operated under the agreements for their own benefits and "saw to it that the expense of maintenance arose from approximately *702 $35.00 per acre unit in 1947 to more than $175.00 per acre unit in 1953," and they "so manipulated the costs of maintenance and operation of each unit that each year the cost of operation and maintenance was nearly equal to or exceeded the return from each unit under a scheme to keep the expenses increasing in order to retain all of the income from the land," and they wrongfully, with intent to defraud, took returns from the land which should have gone to plaintiffs. Defendants have wrongfully failed to account for and have withheld from plaintiffs and others similarly situated monies due them in an amount of about $800,000.
Plaintiffs prayed for an accounting, for an order enjoining disposition of corporate assets, for cancellation of the ninety-nine year lease contracts, for a receiver to take over operation of the groves, and for an order enjoining defendants from doing any more work on the properties involved in the litigation.
Attached to and made a part of the complaint are copies of the contract of sale and the lease agreement entered into between the corporation and plaintiff Verna B. Wiley. Both of these instruments bear the date December 7, 1943. The complaint does not contain copies of the contract and lease agreement alleged to have been entered into by the plaintiff Bessie E. Duncan.
With reference to class suits, Rule 3.6, Florida Rules of Civil Procedure provides:
"Rule 3.6. Class Suits: Effect of
"When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole."
The language of this rule is identical to that appearing in the old Chancery Act, Section 63.14, F.S. 1941, F.S.A., under which we have held that one endeavoring to bring a class suit must plead facts showing the right and necessity for that and "more is required than the mere pleading the language of the statute." City of Lakeland v. Chase Nat. Co., 159 Fla. 783, 32 So.2d 833, 838. With reference to the subject of similar frauds practiced on various persons as the basis of representative suit, in Note, 1938, 114 A.L.R. 1015, 1019, it is stated:
"Thus far, neither under existing codes nor under general rules of law, has a representative action to recover damages for similar frauds practiced on numerous persons been upheld. In general, the objections to such suits seem to be the same as those applying to representative suits to rescind for fraud; namely, that the demands of the various defrauded parties are not only legally distinct, but each depends upon its own facts, and that a material difference in facts may exist. Furthermore, a choice of remedies is ordinarily presented, and the plaintiff cannot know that other persons similarily situated will not elect to affirm the fraudulent transaction."
In the instant case we note particularly that each of the alleged numerous purchasers of units of land acquired his interest under separate contracts with the defendant and it does not appear that in these contracts was any provision showing a cooperative enterprise or any showing that any purchaser had a pecuniary interest in any development of lands other than those covered by his own contract. Further the complaint shows that other alleged purchasers, if they have any cause of action against defendants, have a choice of remedies available to their individual selection and their rights of actions may be subject to separate and distinct defenses.
One or two simple illustrations demonstrate conclusively that the facts alleged in the complaint below not only do not present a situation which is the subject of a class suit but that to allow it to proceed as a class suit could work great injustices upon many persons who were not subject to the processes of the court and could well result in depriving such persons of their *703 property without due process of law. For example, it may well be that some of the purchasers have used the alleged losses occasioned by the actions of the sellers to their advantage in their income tax returns over a long period of time. The litigation could terminate in substantial liability for costs. Moreover, there may be many purchasers who are satisfied with their bargains whether the trees had ever been planted or, if planted, regardless of the costs of maintenance. There may be differences in every one of the many contracts involved of a nature that would result in the legal rights of the parties, in each instance being different.
We fail to find any community of interest between the two plaintiffs in this suit and no common ground upon which they can join in building a single action on behalf of themselves and upon all other purchasers of units from defendant corporation. Moreover, while Rule 3.7, 1954 Rules of Civil Procedure provides that "the Plaintiff may join in one complaint as many causes of action, cognizable in equity, as he may have against the defendant," it expressly provides where there is more than one plaintiff "The causes of action joined must be joint."
The facts in Associated Almond Growers of Pasco Robles v. Wymond, 9 Cir., 42 F.2d 1, are almost identical to those of the case at bar. In the Wymond case the defendant corporation subdivided large tracts of land in California into small units for the purpose of raising almonds and prunes. Sales of about 800 units were made to individual purchasers residing in different parts of the United States. These purchasers by election could pay one-half the unit price by allowing the corporation to remain in possession and operate the property and retain the products until a net return covered the balance due. As part of the agreement the corporation promised to prepare the land, plant trees and cultivate them in a husbandlike manner for four years. About 100 purchasers became dissatisfied and joined in a suit against the defendants on behalf of themselves and the other unit purchasers alleging the defendants had procured the contracts by false representation, that the corporation had not performed its obligation, and that the corporation and a trustee, with whom it had a contract, had diverted certain trust monies. The plaintiffs sought rescission, damages, injunction and a receiver.
The trial court entered an interlocutory order enjoining the corporation from performance of certain acts. This decree of the lower court was reversed by an opinion of the Federal Circuit Court which discussed in detail the propriety of the action as a basis for exercise of equity jurisdiction. Aside from the trust agreement and the possible interest therein of some of the plaintiffs, the Court declared that each plaintiff had shown nothing more than that he had a plain remedy at law for an individual action and was without any actionable interest in the claims of the other plaintiffs, and, the Court concluded, "that being true, not only, in this aspect of the case, is there a misjoinder of the parties plaintiff and the defendant, but the complaint, beside being multifarious, is not of equitable cognizance."
We have not overlooked the fact that the chancellor below reserved his ruling on whether or not the suit could be maintained as a class action. This question should have been determined by the lower court when he ruled on the motion to dismiss. To leave this matter unsettled will greatly complicate the trial of the issues of the cause and could well be prejudicial to the interests of both the plaintiffs and the defendants. Counsel for both parties at the Bar of this Court agree that the matter should be disposed of before proceeding further with the litigation. Hence our determination to decide the question in this opinion.
Having determined that the suit may not proceed as a class suit, we now direct our attention to that part of the order of the lower court overruling the motion of the defendants to dismiss the complaint on the ground that it failed to state a cause of action. In the light of our holding that the cause may not proceed as a class action, *704 the chancellor below may desire to reconsider his ruling on the motion to dismiss or reopen the cause for the purpose of allowing the plaintiffs to amend their complaint if they so desire and such authority is hereby vested in the chancellor.
Certiorari is granted as to that portion of the order deferring ruling on the motion to dismiss for misjoinder of parties with directions to the lower court to enter an appropriate order with respect thereto. Subject to the provisions of the preceding paragraph, certiorari is denied as to the remaining portion of the order here reviewed.
MATHEWS, C.J., and SEBRING and ROBERTS, JJ., concur.