## BERNHARDT, et al. v ARVIDA CORPORATION, et al.

### Case No. 86-225 (CL) E

Fifteenth Judicial Circuit, Palm Beach County

January 27, 1987

### APPEARANCES OF COUNSEL

Gerald F. Richman and Michael A. Hanzman, Floyd Pearson Richman Greer Weil Zack & Brumbaugh, P.A., for plaintiffs.

James W. Beasley, Jr. and Pamela A. Chamberlin, Beasley, Olle & Downs, P.A., for defendants.

## OPINION OF THE COURT

W. C. WILLIAMS, III, Circuit Judge.

THIS CAUSE came on to be heard on November 24, 1986 on the plaintiffs' motion for class certification, and the Court having heard argument of counsel and considered evidence presented and being otherwise fully advised in the premises, it is hereby

ORDERED, the plaintiffs' motion for class certification is denied, on the basis of the findings of fact and conclusions of law set forth herein.

### COUNTS I-XII FOR RELIEF FROM BOCA WEST CLUB EQUITY PLAN

#### Findings of Fact As To Counts I-XII

1. In counts I-XII of the second amended complaint ("the Complaint"), the plaintiffs seek compensatory, punitive, and treble damages, rescission, and constructive trust against the defendants.

2. The factual basis for each of these counts is that:

12. In 1972 ARVIDA commenced the sale of residential units and lots at Boca West and then and thereafter represented to prospective purchasers that the CLUB Facilities would be available during their lifetimes.

13. ARVIDA informed prospective purchasers that use of the CLUB Facilities was contingent upon payment of annual dues which varied slightly according to the nature of the use of the CLUB Facilities desired by the purchasers.

14. ARVIDA, until July 25, 1985, did not inform prospective purchasers that in addition to annual dues, property owners at Boca West would have to purchase an equity membership in the CLUB for a minimum of $10,000 in order to maintain access to the CLUB Facilities. In fact, ARVIDA at no time ever told prospective purchasers that the CLUB would, in the future, be sold even though ARVIDA planned such a sale from the very inception of BOCA WEST.

(Complaint, paras. 12-14, which are incorporated by reference into all counts of Complaint).

3. The plaintiffs seek to establish a class consisting of all property owners in Boca West who have purchased equity memberships in Boca West Club, Inc. (*See* Complaint, para. 20).

4. Counts I-XII allege in essence that the defendants,[1] acting on behalf of Arvida Corporation ("Arvida"), made misrepresentations and omissions to members of the putative class at the time they purchased units at Boca West to the effect that the purchasers would have the right, in perpetuity, to use the facilities of Boca West Club, with no obligation at any time to purchase an equity membership in the Club.

5. There are approximately 2,751 residential units in Boca West. As of November 24, 1986, approximately 2,500 residents had purchased equity memberships in Boca West Club, Inc. (Transcript at 199-201; Affidavit of Jeri Poller filed 11/24/86).

6. Of the 2,751 units in Boca West, only 1,564 were built by Arvida. The remaining 1,187 units were built and sold by other builders. (Transcript at 199-201; Affidavit of Jeri Poller filed 11/24/86).

7. More than fifty percent of the units in Boca West have been resold at least once. (Transcript at 200-01). Thus, more than half of the current residents at Boca West purchased their units not from Arvida or any other builder, but from the previous owners of the units.

8. Each of the named plaintiffs and each of the purported class members purchased their real estate under separate and distinct contracts.

9. The circumstances surrounding each named plaintiff's purchase of his real estate in Boca West are separate and distinct in that each purchased his residential units at different times, from different entities, and under different inducements. (Transcript at 7-139). Specifically:

a. The four named plaintiffs bought their units at various times from 1976 to 1985.

b. Three of the named plaintiffs have purchased more than one unit in Boca West.

c. All of the named plaintiffs' current units in Boca West were purchased from builders other than Arvida Corporation.

d. The named plaintiffs all dealt with different sales persons in the purchases of their homes.

e. The named plaintiffs all testified that varying oral representations had been made to them regarding their right to use the Boca West Club facilities.

---

[1] The defendants are Arvida Corporation, Boca West Club, Inc., Arvida Realty Sales, Inc., The Walt Disney Company, John W. Temple, Robert E. Anderson, Jeri A. Poller, and Beth Moss. The individual defendants are employees of Arvida Corporation.

f. When residential development at Boca West began in 1973, the Boca West Club facilities consisted of two golf courses, nine tennis courts, and a small clubhouse. By 1985, at the time of the promulgation of the Plan, these facilities consisted of four golf courses, an aquatics center with four swimming pools, thirty-four tennis courts, a new clubhouse, which was completed in 1985, and a fitness center. (Affidavit of Jeri Poller filed 11/24/86).

g. The named plaintiffs all signed membership applications for the Boca West Club, prior to the equity Plan's promulgation, which stated either that, "[m]embership to the Boca West Club conveys no equity rights in Club facilities, property or other assets. Membership is not transferable and is granted on a recurring annual basis only," or that "[t]he Club shall confer no equity rights in applicant and the Club shall have the right to terminate any and all memberships at any time for any reason whatsoever in the sole discretion of the Club."

10. Development of Boca West began in 1968. Construction and sale of residential units began in 1973. The present facilities of Boca West Club have been expanded over the years since Boca West opened. (Transcript at 199-201; Affidavit of Jeri Poller filed 11/24/86). Thus, persons moving into Boca West over the years did so with varying expectations as to the extent of the facilities available.

11. It is anticipated that up to 4,000 total units may be built and sold in Boca West by 1990, when completion of residential construction at Boca West is expected to take place. (Affidavit of Jeri Poller filed 11/24/86).

12. All new units in Boca West are sold through Arvida Realty Sales, Inc. ("ARSI"). Units that are resold by their original owners are not required to be sold through ARSI, but may be sold using any other broker or no broker, at the individual seller's choice. (Affidavit of Jeri Poller filed 11/24/86). Two of the four named plaintiffs have themselves resold units in Boca West using no broker at all. (Transcript at P23 L21, P96). There is no evidence that persons who bought units in Boca West through brokers other than ARSI had any reasonable basis, based on representation or otherwise, to expect that they would have perpetual access to the Club facilities.

13. From 1968 to October 1, 1985, when the Plan became effective, membership in Boca West Club was available on an annual basis only. The membership agreement forms in use during most of those years contained explicit language stating that members had no equity rights

in the Club and that any or all annual memberships could be terminated at any time.

14. From the pleadings and from the facts adduced at the hearing on this motion, it appears that the factual basis for each class member's claim for relief from the equity Plan is based on its own separate and distinct facts, which would differ from class member to class member as to such particulars as:

a. when he purchased his unit in Boca West;

b. what Club facilities were in existence at that time;

c. whether he purchased his unit from Arvida, from another independent builder, or from an individual as a resale;

d. whether the seller was represented by ARSI, some other broker, or no broker at all;

e. if ARSI was the broker, which sales person he dealt with;

f. if ARSI was the broker, whether ARSI was in that instance representing and acting on behalf of Arvida, another builder, or an individual seller;

g. the particular representations and omissions made by persons authorized to speak on behalf of Arvida as to the purchaser's rights in the Boca West Club; and

h. whether any such representations or omissions were reasonably relied upon by the individual class member in purchasing his unit in Boca West.

### Conclusions of Law As To Counts I-XII

15. The claims set forth in counts I-XII may not proceed as a class action, because the basis for all of these claims is that various misrepresentations and nondisclosures were made to purchasers as to their right to the perpetual use of the Boca West Club facilities. Thus the gravamen of the action is fraud, and the settled law of Florida prohibits class actions based on fraud. *Lance v. Wade*, 457 So.2d 1008 (Fla. 1984); *Avila South Condominium Association v. Kappa Corp.*, 347 So.2d 599 (Fla. 1977); *Osceola Groves v. Wiley*, 78 So.2d 700 (Fla. 1955); *Maner Properties, Inc. v. Siksay*, 489 So.2d 842 (Fla. 4th DCA 1986). *Osceola Groves* holds, in an oft-quoted passage:

Thus far, neither under existing codes nor under general rules of law, has a representative action to recover damages for similar frauds practiced on numerous persons been upheld. In general, the objections to such suits seem to be the same as those applying to

80

representative suits to rescind for fraud; namely, that the demands of the various defrauded parties are not only legally distinct, but each depends upon its own facts, and that a material difference in facts may exist. Furthermore, a choice of remedies is ordinarily presented, and the plaintiff cannot know that other persons similarly situated will not elect to affirm the fraudulent transaction.

*See id.* at 702.

16. The same rule prohibiting class actions based on fraud applies regardless of whether the remedy sought is equitable or legal in nature. In both *Lance* and *Osceola, supra,* the Florida Supreme Court held that where the factual basis of the claims was fraud, the lawsuit could not be maintained as a class action, notwithstanding that the plaintiffs might have valid claims for both legal and equitable relief.

17. The fact that the plaintiffs' claims are based in part upon nondisclosure of material fact, as well as upon affirmative misrepresentations, does not take this case out of the rule prohibiting class actions based on fraud. *See, Maner,* 489 So.2d at 844.

18. The claims of the various members of the purported class are all inherently diverse as a matter of law in that they are not only legally distinct, but each member's claim is also based on the diverse and distinct facts arising from his purchasing real estate in Boca West under his own separate and distinct contract and under separate and distinct circumstances. *Lance,* 457 So.2d at 1011; *Avila,* 347 So.2d at 608-09; *Maner,* 489 So.2d at 845.

19. The named plaintiffs have not met their burden of proving that the claims or defenses of the named parties raise questions of law and fact common to those questions of law and fact raised by the claims of each member of the class, as required by rule 1.220(a) of the Florida Rules of Civil Procedure.

20. The named plaintiffs' claims are not typical of the claims of each member of the class.

21. Because of the lack of typicality and commonality, the named plaintiffs, while they might have valid individual claims for the relief sought, are unable to fairly and adequately protect and represent the interests of each member of the class, whose claims, if any, rest on facts and circumstances distinct from those of the named plaintiffs.

### COUNTS XIII AND XIV FOR CONTROL OF BWMA

#### Findings of Fact As To Counts XIII and XIV

22. These two counts seek relief from Arvida's allegedly wrongful

81

retention of ownership of the fourth golf course at Boca West, by virtue of which Arvida allegedly wrongfully maintains control of Boca West Maintenance Association, Inc. ("BWMA"), the master property owners association in Boca West.

23. The pleaded facts which allegedly make Arvida's actions in this regard wrongful are that:

In an effort to maintain control over the BWMA, ARVIDA retained legal title to over 200 [sic] acres in Boca West by retaining legal title to one of the golf courses in Boca West (the fourth golf course). ARVIDA represented to the Plaintiffs that it was necessary to retain title to the fourth golf course because substantial development activities were occurring adjacent to that golf course at that time. This representation however was a misrepresentation of material fact in that ARVIDA knew or should have known that it was not necessary for it to retain title to the fourth golf course in order for it to insure that those development activities could be successfully completed. In fact other properties which ARVIDA did turn over to Plaintiffs were undergoing more substantial development activity than that which was occurring adjacent to the fourth golf course. The above misrepresentation which was material and justifiably relied upon by the Plaintiffs, was made by ARVIDA for the sole purpose of retaining control over the BWMA by retaining ownership of over 100 acres of land within BOCA WEST.

(Complaint, para. 100 of count XIII, incorporated by reference in count XIV).

24. The plaintiffs presented no evidence at the hearing to show why these counts, which are clearly based on alleged misrepresentations of fact, are appropriate for class certification.

### Conclusions of Law As To Counts XIII-XIV

25. The plaintiffs have conceded that count XIV, entitled "Fraudulent Inducement," is not maintainable as a class action. (Transcript at 226; see Plaintiffs' Proposed Order submitted Jan. 7, 1987, footnote 3).

26. The Court concludes that count XIII also is not maintainable as a class action. The factual basis for counts XIII and XIV is identical. Because these counts are both based on fraudulent misrepresentations, they are clearly within the rule stated in Osceola Groves, Avila, Lance, and Maner, supra, prohibiting class actions based on fraud.

27. The fact that count XIII seeks injunctive relief rather than damages does not exempt that count from the prohibition against fraud class actions. See Osceola and Lance, supra.

## COUNTS XV-XVIII FOR RELIEF FROM SABAL LAKE RESORT HOTEL ACTIVITY

### Findings of Fact As To Counts XV-XVIII

28. Counts XV-XVIII of the Complaint seek equitable relief and damages based on Arvida's allegedly unlawful "resort hotel commercial activities" in the Sabal Lake area of Boca West.

29. Counts XV-XVI seek an injunction and damages, respectively, based on alleged violations of the Palm Beach County Zoning Code and various condominium documents.

30. Count XVII seeks an injunction based on promissory estoppel.

31. Count XVIII seeks an injunction on the theory of private nuisance.

32. At the hearing on this motion, none of the plaintiffs testified that he had sustained any special damages as a result of the alleged resort hotel activity at Sabal Lake.

### Conclusions of Law As To Counts XV-XVIII

33. Counts XV and XVI cannot be maintained as a class action based on alleged violations of the zoning code and condominium documents, because there is no evidence that the named plaintiffs have sustained an irreparable, special, and material injury differing in kind from that sustained by the general public, as is required in order to maintain a private cause of action to enforce the zoning code. *See Boucher v. Novotny*, 102 So.2d 132 (Fla. 1958). Because none of the named plaintiffs himself has standing to maintain such a cause of action, the named plaintiffs cannot adequately represent the class on those claims.

34. Count XVII, based on promissory estoppel, is not suitable for class action treatment because it requires proof of the individualized circumstances surrounding each class member's purchase of a home in Boca West. The plaintiffs, at the hearing, attempted to characterize this claim as being one for equitable estoppel, but this does not effect the court's ruling on this point. Equitable estoppel, like promissory estoppel, requires individual proof of reasonable reliance on a representation. See *Head v. Lane*, 11 F.L.W. 2086, 2087 (Fla. 4th DCA Oct. 10, 1986). The only difference is that in equitable estoppel the representation may be by conduct instead of by words. *Id.*

35. Count XVIII, for private nuisance, likewise may not be maintained as a class action because none of the plaintiffs has suffered "special damages" differing in both kind and degree from the commu-

83

nity at large. See *Skaggs-Albertson's v. ABC Liquors, Inc.*, 363 So.2d 1082, 1088 (Fla. 1978).

## CONCLUSION

36. The court notes that, while it finds that this action may not be maintained as a class action on the grounds stated above, no issue is presented as to the numerosity of the putative class and the adequacy and qualifications of class counsel, which was stipulated to at the hearing on this motion.

37. The court therefore is compelled to follow the prevailing view in the cases cited above, notwithstanding its own opinion that the better view is expressed by Justice England in his dissent in *Avila South Condominium Ass'n, Inc. v. Kappa Corp.*, 347 So.2d 599, at page 610 wherein he states:

> The time has come, I believe, to acknowledge the possibility that condominium developers in Florida may have spawned a new form of fraud—class fraud by general, public misrepresentations—and to admit that historic rules governing access to the courts are inappropriate to remedy this unique and pervasive problem. I would at least shift the burden of proving up the class by allowing the action and then, if it should develop as a matter of proof by the developers that individual unit owners were not in fact misled by the asserted representations or did not in fact rely on them, the unit owners in that category should simply be dismissed from the class. See *Davidson v. Lely Estates, Inc.*, 330 So.2d 528 (Fla. 2d DCA 1976).

38. Nothing in this order shall effect the rights of any individual plaintiff or class member to maintain an individual action for any claims he may have against the defendants.

DONE AND ORDERED this 27th day of January, A.D., 1987.