693 So.2d 1015 (1997)
SOUTHEAST BANK, N.A., and First Union National Bank of Florida, Appellants,
v.
Alma ALMEIDA, Stanley Tashman, Namon Gilbert, Appellees.
No. 96-1846.
District Court of Appeal of Florida, Third District.
May 7, 1997.
Rehearing Denied June 11, 1997.
*1016 Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., and Bradford Swing, and Mark P. Dikeman, Miami, for appellants.
Lyons & Farrar, P.A., and Douglas S. Lyons, and Marsha L. Lyons, Coral Gables, for appellees.
Before GERSTEN, GREEN and SHEVIN, JJ.
GREEN, Judge.
Southeast Bank, N.A. and its successor in interest, First Union National Bank of Florida (collectively "bank") appeal a non-final order granting appellees' motion for class certification in the action below. We reverse upon our holding that as a matter of law, this order violates Florida's long-standing fraud class action rule prohibiting fraud class action suits based upon separate agreements.

I
The case below was filed on September 18, 1991 by the appellees. The appellees are all judgment debtors of the bank in that they are all former holders of credit cards issued by the bank who were sued by the bank for the nonpayment of the amounts shown on their respective accounts. Default judgments were duly entered in favor of the bank in each suit when none of the appellees stepped forward to answer or otherwise appear in their respective suits after notice.
*1017 According to the general allegations of the amended complaint for class certification below, the bank conspired with its former legal counsel, Blackwell, Walker, et al., in each of these collection suits to fraudulently maximize the amount of the judgment awarded against the appellees by unlawfully seeking to collect interest accrued on a compounded balance comprised of both principal and interest (i.e., "interest on interest"). The unlawful interest amount appeared in each complaint and affidavit of indebtedness filed against each appellee as well as in the settlement agreements procured by the bank with some of the appellees. The appellees assert that the court relied upon the fraudulent misrepresentations made by the bank as to the interest owed in entering the default judgments.
Based upon these general allegations, the appellees seek various forms of relief in a seven count amended complaint. In Count I of this complaint, the appellees have filed in an independent action pursuant to Rule 1.540(b), Fla. R. Civ. P. to set aside and reopen default judgments and/or settlement agreements entered between 1981 and 1991 on the basis of extrinsic fraud. The appellees seek to have these judgments and/or settlement agreements set aside to permit them to raise meritorious defenses to these actions. In Counts II and III, the appellees seek unspecified damages for usury under both state and federal law, respectively. Count IV is an action for unspecified damages under the "Florida Consumer Collection Practices Act," sections 559.55-559.78, Florida Statutes (1991). In Count V, the appellees seek damages under the federal "Truth In Lending Act," 15 U.S.C. Section 1601 et seq. Count VI is an action for rescission of all settlement agreements entered into between appellees and the bank. Finally, Count VII is an independent action brought pursuant to Rule 1.540(b), to set aside all judgments entered in favor of the bank within the one year period preceding the filing of the action below on the basis of intrinsic fraud.

II
The appellees' motion for class certification came on for hearing before the court below. Pursuant to Rule 1.220, Fla. R. Civ. P., the trial court found, inter alia, that there were common issues of fact[1] and law[2] to justify class certification. Accordingly, pursuant to this rule and this court's decision in Broin v. Philip Morris Co., 641 So.2d 888 (Fla. 3d DCA 1994), review denied, 654 So.2d 919(Fla.1995), the lower court granted class certification. The class as certified was defined as:
Any personal 18 percent card holder with Southeast Bank against whom Southeast has obtained a default judgment or [settlement] agreement on law suits commenced by Blackwell, Walker, et al., which includes *1018 interest on both principal and accrued interest since 1981.

III
On this appeal, the bank first asserts that the trial court erred in certifying the class because of the prohibition in Florida against fraud class actions based upon separate contracts. We agree. This fraud class action rule was first enunciated in 1955 by our supreme court in Osceola Groves, Inc. v. Wiley, 78 So.2d 700 (Fla.1955). In Osceola, the supreme court considered decisions of other states as well as the federal courts and observed that with reference to the subject of similar frauds practiced on various persons as the basis of a representative suit, it is stated in Note, 1938, 114 A.L.R. 1015, 1019 that:
Thus far, neither under existing codes nor under general rules of law, has a representative action to recover damages for similar frauds practiced on numerous persons been upheld. In general, the objections to such suits seem to be the same as those applying to representative suits to rescind for fraud; namely, that the demands of the various defrauded parties are not only legally distinct, but each depends upon its own facts, and that a material difference in facts may exist. Furthermore, a choice of remedies is ordinarily presented, and the plaintiff cannot know that other persons similarly situated will not elect to affirm the fraudulent transaction.
78 So.2d at 702. The court indicated that in order to institute or defend a class action wherein fraud is alleged, the class members must: 1) be engaged in a cooperative enterprise; 2) have a joint pecuniary interest; and 3) not have a choice of remedies which may be subject to separate and distinct defenses. Id. Thus, based upon these considerations, the court held that where: 1) each of the Osceola plaintiffs had separate contracts with the defendant and there was no showing of a cooperative enterprise; 2) there was no showing that any of the plaintiffs had a pecuniary interest in any contract other than his/her own; and 3) each of the Osceola plaintiffs had a choice of remedies available and that their rights of actions may be subject to separate and distinct defenses, it would work an injustice to permit the suit to proceed as a class action. Id. Since Osceola, the supreme court has consistently reaffirmed its ban on fraud based class action suits for individual agreements. See Lance v. Wade, 457 So.2d 1008, 1011 (Fla.1984); Avila South Condominium Ass'n, Inc. v. Kappa Corp., 347 So.2d 599, 608-09 (Fla.1977).
Similarly, in the case before us, we must also conclude that a class action is improper where the fraudulent claims of the various purported class plaintiffs involve separate settlement agreements and/or default judgments with the bank and there is otherwise no contractual relationship or cooperative enterprise between the plaintiffs themselves. See Osceola, 78 So.2d at 702; Equitable Life Assurance Soc'y v. Fuller, 275 So.2d 568, 569 (Fla. 3d DCA 1973). There may be varying reasons why each of these plaintiffs executed a settlement agreement with the bank and/or allowed a default judgment to be entered in favor of the bank. What one plaintiff may have relied upon in executing a settlement agreement with the bank, for example, may not be material to another. See Lance, 457 So.2d at 1011. Moreover, there may be plaintiffs who are completely satisfied with the terms of their settlement agreements or amounts of the default judgments, regardless of the amount of interest assessed.[3]See Frankel v. City of Miami Beach, 340 So.2d 463, 468 (Fla.1976). Simply put, the individual nature of each of the agreements and/or judgments being sued upon does not lend itself to the certification of this case as a class action.
We must emphasize that the Osceola fraud class action rule, while barring fraud claims based upon separate contracts, does not purport to otherwise bar fraud based class actions or breach of contract class actions generally. For this reason, the appellees' reliance upon this court's decisions in R.J. Reynolds Tobacco Co. v. Engle, 672 *1019 So.2d 39, 41 (Fla. 3d DCA), review denied, 682 So.2d 1100 (Fla.1996), and Broin, 641 So.2d at 888 (both permitting the class certification of personal injury rather than contractual actions based upon, inter alia, the alleged fraudulent misrepresentation of the dangers of second-hand smoke), as well as Sears, Roebuck and Co. v. Labora, 670 So.2d 1025, 1026 (Fla. 3d DCA 1996) (affirming a class certification order in a breach of contract action sans fraud allegations) is misplaced.

IV
The appellees alternatively appear to assert that an exception to the Osceola fraud class action rule was created in Estate of Bobinger v. Deltona Corp., 563 So.2d 739, 744-45(Fla. 2d DCA 1990) wherein the Second District held as a matter of law that this rule does not preclude a class action for extrinsic fraud claims based upon separate contracts. We need not express any opinion as to the Bobinger decision because the allegations of fraud in the amended complaint before us are clearly intrinsic rather than extrinsic in nature.
Pursuant to the provisions of Rule 1.540(b), any independent action which seeks to attack a judgment on the basis of extrinsic fraud may be brought at any time, but an action which seeks to challenge a judgment on the basis of intrinsic fraud is time barred unless it is brought within one year of the entry of the judgment.[4]See DeClaire v. Yohanan, 453 So.2d 375, 377-78 (Fla.1984). In DeClaire, the supreme court succinctly defined both extrinsic and intrinsic fraud. Extrinsic fraud was defined as:
[T]he prevention of an unsuccessful party [from] presenting his case, by fraud or deception practiced by his adversary; keeping the opponent away from court; falsely promising a compromise; ignorance of the adversary about the existence of the suit or the acts of the plaintiff; fraudulent representation of a party without his consent and connivance in his defeat; and so on.
Id. at 377.
In other words, extrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause. Id. Thus, for example, in Fritsevich v. Estate of Voss, 590 So.2d 1057 (Fla. 3d DCA 1991), we held that extrinsic fraud on the court was alleged in a probate matter where in a petition to determine heirs, the decedent's distant female relative allegedly misled the court into concluding that she was the decedent's sole heir and beneficiary when she knew or should have known that there were family members who had a less remote relationship to the decedent but who never received notification of the proceeding. In that case, we recognized that the distant relative's alleged misrepresentation to the court, that she was the sole heir to the estate, effectively precluded the other family members from participating in the proceeding. 590 So.2d at 1058.
"Intrinsic fraud, on the other hand, applies to fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried or could have been tried." DeClaire, 453 So.2d at 377. The court stated that consistent with the general rule, false testimony given within a proceeding constituted intrinsic fraud:
[I]f a judgment was obtained upon false testimony or a fraudulent instrument and the parties were heard, the evidence submitted to and received consideration by the court, then it may be said that the matter has been actually tried, or was so in issue that it might have been tried and the parties are estopped to set up an intrinsic or direct fraud to vitiate the judgment, because the judgment is the highest evidence and cannot be contradicted by the parties to it.
Id.
Thus, in Arrieta-Gimenez v. Arrieta-Negron, 551 So.2d 1184 (Fla.1989), where the *1020 supreme court was posed with the question of whether Florida courts would give res judicata effect to a consent judgment approving a property settlement, if it could be demonstrated more than one year later that one party had fraudulently misrepresented to the other or concealed from the other, information that was material to the settlement; the court answered in the affirmative finding the misrepresentation to be intrinsic rather than extrinsic in nature:
Appellant had full access to discovery (in fact, the record reveals that appellant made full use of her discovery rights), and she had every right to reject the settlement offer until she could adequately explore the extent of her father's holdings in Puerto Rico. Appellant had sufficient opportunity from the outset to discover the fraudulent behavior, and thus bring an action in court either before the settlement offer was made or within the one year time limit expressed in rule 1.540(b).
551 So.2d at 1186.
Similarly, in Guerriero v. Schaub, 579 So.2d 370 (Fla. 4th DCA), review denied, 591 So.2d 181 (Fla.1991), where the former wife attempted to set aside a four and a half year old dissolution judgment which incorporated a property settlement agreement by alleging that her former husband fraudulently omitted certain material information, it was held that the former wife had established intrinsic rather than extrinsic fraud, thus making her action time-barred.
The appellees' allegations, in the instant case, that the bank misrepresented the amount of interest to which it was lawfully entitled in the respective complaints, affidavits of indebtedness, and/or settlement agreements are likewise intrinsic rather than extrinsic in nature. The appellees are simply asserting that the bank allegedly gave false or perjured testimony within these collection proceedings. In no way can it be concluded that the bank's alleged false or perjured testimony, even if true, kept any of the appellees away from their respective lawsuits or deprived them of their day in court. Indeed, the amounts of indebtedness, including interest, being claimed by the bank affirmatively appeared in the complaints duly served upon each of the appellees. Default judgments were entered against each of the appellees only after they received notice of the proceeding and voluntarily elected not to defend the same.

V
Having determined that the appellees' actions are intrinsic rather than extrinsic in nature, it thus appears that not only may appellees not proceed with this action as a class action at this time, but appellees may individually proceed with their attempts to set aside only those judgments which were entered within one year of the filing of this lawsuit on the basis of intrinsic fraud. See 579 So.2d at 372. If and when these judgments are successfully set aside, appellees may then raise and pursue their remaining statutory remedies. We do not foreclose the possibility in the future that appellees may re-seek to proceed with any available statutory remedies as a class action, see, e.g., Whigum v. Heilig-Meyers Furniture, Inc., 682 So.2d 643, 647 (Fla. 1st DCA 1996), but we do not now express any opinion as to the legal propriety of such a future class certification at this time.
For all of the foregoing reasons, the order under review is reversed and this cause is remanded for proceedings consistent with this opinion.
NOTES
[1] The common issues of fact were found to be:

1. All class members were 18 percent credit card holders of personal credit cards with Southeast Bank.
2. Each Plaintiff was sued by Southeast Bank claiming an unlawful accrued interest on a compound balance comprised of both principle [sic] and interest in violation of the credit card agreement and Florida Statutes, section 678, et seq. and 12 U.S.C. Sections 85 and 86.
3. Plaintiffs claim the class members either entered into a usurious agreement to prevent further prosecution of the claim or had a judgment entered for an amount which includes unlawful interest.
4. Plaintiffs claim each judgment was obtained by use of an affidavit filed with the Court that failed to distinguish between principle [sic] and interest and combined principle [sic] and interest into a single balance for the purpose of seeking excessive accrued interest after default.
5. Plaintiffs claim in each case where a judgment was entered, the Court relied upon the affidavit of the Bank through its counsel in ordering a judgment including assessing interest accrued on the combined interest and principle [sic] balance.
* * * * * *
[2] The common issues of law were found to be:

1. Whether Southeast Bank committed fraud on the court.
2. Whether Southeast Bank judgments may be set aside against each Plaintiff.
3. Whether the interest claimed or awarded Southeast Bank:
a. Violates the Federal Trust [sic] In Lending Act, 15 U.S.C.A. 1601 et seq.
b. Violates the Florida Consumer Collection Practices Act, F.S. Section 559.77.
c. Violates the Florida Usury Statutes, Section 687.02, 687.03 et seq.
d. Violates the Federal Usury Statutes, 12 U.S.C., Section 86, 87 et seq.
[3] Particularly where as here, there are no allegations in the amended complaint that the bank is presently attempting to collect any of these dated judgements or enforce the terms of the settlement agreements.
[4] This rule was subsequently amended, effective January 1, 1993, to require any motion or action seeking to set aside a judgment for fraud (whether designated intrinsic or extrinsic) to be brought not more than one year after the entry of the judgment except that there is now no time limitation for motions based on fraudulent financial affidavits in marital cases. In Re Amendments to the Florida Rules of Civil Procedure, 604 So.2d 1110, 1111 (Fla.1992).