728 So.2d 261 (1999)
HUMANA, INC., a Delaware corporation, Humana Medical Plan, Inc., a Florida corporation f/d/b/a Humana Health Plan Of Florida, Inc.; and Humana Health Plan Of Florida, Inc., Appellants,
v.
Israel CASTILLO, Lorenzo Ruiz, Irene Breitenfeld, Hiram Mott, and Ralph Philpot, Appellees.
No. 98-01992.
District Court of Appeal of Florida, Second District.
January 15, 1999.
Rehearing Denied March 8, 1999.
*262 Edward M. Waller, Jr., Hala A. Sandridge, and Elizabeth A. Boland of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Appellants.
Jonathan L. Alpert, William J. Cook and David Ferrentino of Alpert, Barker & Rodems, P.A., Tampa, for Appellees.
CAMPBELL, Acting Chief Judge.
Appellants (Humana) challenge the trial court order finding that appellees' action against Humana qualified as a class action suit. We reverse.
Appellees brought this action for rescission and damages allegedly arising from their enrollment in appellants' (Humana) Gold Plus Plan, a Medicare health maintenance organization (HMO). Appellees allege that Humana misrepresented and/or failed to disclose the terms of its arrangements with physicians, particularly its affiliated primary care physicians (PCPs). Specifically, appellees claim Humana misrepresented and/or failed to disclose:
1. that PCPs were paid a flat rate per member per month (capitation) by Humana for the care of members;
2. that Humana had financial arrangements with PCPs which allegedly created an incentive not to treat or not to refer to a specialist;
3. that Humana allegedly required PCPs to obtain authorization from Humana before admitting a member to a hospital and before discussing with a member the possibility of hospitalization;
4. that Humana's contracts with PCPs allegedly contained "gag" clauses, which restricted the physicians' ability to discuss treatment options with members; and
5. that members were "locked in" to Humana providers.
The complaint further alleges that appellees' PCPs failed to provide necessary referrals to specialists or failed to order indicated tests as a result of their financial arrangements with Humana.
Appellees allege claims for fraud, unjust enrichment, and money had and received. All three counts are premised upon the theory that Humana allegedly misrepresented or failed to disclose the above-referenced information to potential enrollees in the plan. Appellees sought rescission and damages under all three counts.
In their complaint, appellees sought to represent a class of all individuals who, between *263 1987 and 1997, enrolled in the Humana Gold Plus Plan. Appellees filed a motion to have the class certified pursuant to Florida Rule of Civil Procedure 1.220, and Humana opposed the motion. An evidentiary hearing was held on the class certification motion, and the trial court heard from four purported class representatives and four putative class members. These individuals placed different levels of importance on information allegedly withheld and the HMO's financial arrangements with its affiliated physicians. Some of the individuals testified that such information would not have affected their decisions to enroll and did not affect their decisions to remain enrolled. Others testified that had they known about financial arrangements, they would not have enrolled. These same individuals have each enrolled with another Medicare HMO and, in spite of the fact that they then were aware of such arrangements, they failed to inquire about that HMO's arrangements with its physicians. One class representative and one witness affirmatively stated the financial arrangements between Humana and its doctors was "none of [their] business." Another individual testified that had he known about the arrangements, he would not have enrolled; and, now that he is a Medicaid recipient, he has not enrolled with another HMO.
Given this testimony, Humana argued that under prevailing Florida law the class could not be certified under rule 1.220 because a class action was unsuitable for fraud actions, citing Lance v. Wade, 457 So.2d 1008 (Fla. 1984) (holding that the class action device was inappropriate for fraud actions). Consistent with the Lance analysis, Humana argued that issues common to the class did not predominate over individual issues and that a trial would devolve into a series of mini-trials as to whether each individual class member would have enrolled in the Humana Gold Plus Plan even if the omitted information had been disclosed.
Appellees responded that a class action was appropriate because this was an "omissions" case, not a fraudulent misrepresentation case, and that in an omission case the reliance prong need not be proved. The trial court agreed with appellees' argument and certified the class. The trial court, primarily relying on out-of-state authorities, attempted to distinguish Lance on the basis that the fraud in Lance involved active misrepresentations rather than fraud by "omission," as alleged in this case.
Appellees' complaint alleges that Humana fraudulently induced them and the class into joining the Gold Plus Plan by failing to disclose material information to them and, in particular, failing to disclose the following material facts while marketing its Medicare HMO:
 A member's primary care physician would receive the same fixed fee from Humana regardless of the treatment required or desired, and the primary care physician would therefore make more money for less treatment provided to the member;
 The primary care physician bore the costs of specialty consultations, diagnostic testing, hospital admission, or other health care services and thus had no incentive to prescribe these services;
 Humana's agreements with primary care physicians created a financial incentive to provide absolutely no or minimal health care services to the Humana members and a fiscal disincentive to refer members to specialty consultations, diagnostic testing, hospital admissions or other medical services/treatment;
 Primary care physicians had a financial incentive to "carry" as many members as would select a physician, regardless of whether the physician could treat or provide adequate medical services to such a large group of individuals;
 The "gag clauses" in Humana's agreements with its primary care physicians prohibited them from disclosing or advising the member of certain medical treatments Humana would not cover, or did not want to cover, regardless of whether the treatments or procedures might be medically advisable or necessary;
 Humana required its primary care physicians to obtain a pre-admission review before a hospital admission occurred or even before mentioning or conveying the possibility of admission to the member so *264 that such admission could be discouraged, delayed or prevented; and
 If a primary care physician referred a member for specialty care, the member could be "locked in" so that he could only see certain Humana approved specialists.
In appellees' count for fraud in the inducement, they allege that Humana used these omissions to perpetuate a fraud on appellees and the class. Appellees argue that each class member reasonably and justifiably relied on the information Humana provided them, which did not include this material information essential to deciding whether to enroll, and they would have acted differently had this information been disclosed.
Appellees also allege that Humana's scheme of marketing HMO plans to Medicare beneficiaries based on omissions of material facts resulted in Humana's unjust enrichment. Appellees assert that the money paid or assigned to Humana conferred a substantial and exorbitant benefit upon Humana, which Humana knew of and appreciated, and it would be inequitable for Humana to continue to retain the money paid and/or assigned by appellees and class members.
Finally, in appellees' count for money had and received, appellees allege that Humana constructed, operated and administered its Medicare HMO with secret agreements so that appellees and class members did not receive the services or benefits of a comprehensive health care system. Appellees allege that Humana had exclusive knowledge of its third party provider contracts which actually controlled the health care services provided by its HMO, and it used that knowledge to exact a greater price for such services than was fair or reasonable. It would therefore, they argue, be inequitable for Humana to continue to retain the money it obtained from appellees through fraud, imposition and undue advantage.
The trial court certified all three counts of appellees' complaint as a class action on behalf of a class of all Florida Humana Medicare HMO members from the date Humana began marketing Medicare HMOs in Florida to January 1, 1997. The court found that numerous common questions of law or fact existed, including whether Humana failed to disclose material facts, whether the omitted facts were material, whether Humana had a duty to disclose material facts, whether appellees and class members were damaged, and whether Humana was unjustly enriched.
The trial court held that appellees' claims focused on Humana's common course of conduct, i.e., whether Humana failed to disclose material facts during the solicitation and sale of its Medicare HMO. The trial court found that Lance v. Wade did not preclude certification of the fraud count because, unlike the situation in Lance, the appellees' complaint here was not based upon affirmative misrepresentations or statements in individualized contracts. Rather, the case was based solely on the failure to disclose material facts in standardized marketing material and uniform adhesion contracts. The trial court separately held that appellees were entitled to certification of their two equitable counts.
We disagree with the analysis of the trial court and conclude that certification of this class was contrary to Lance v. Wade. We conclude that the Florida Supreme Court has clearly and unequivocally held that class actions seeking relief from separate contracts on the basis of fraud, whatever the genesis of the fraud, are prohibited. See Lance v. Wade; Avila South Condominium Ass'n v. Kappa Corp., 347 So.2d 599 (Fla.1977); Osceola Groves v. Wiley, 78 So.2d 700 (Fla. 1955). The rationale for this prohibition is that "[w]hat one person may rely upon in entering into a contract may not be material to another purchaser." Lance at 1011. The district courts of appeal have consistently followed this rule. See Oruga Corp. v. AT & T Wireless of Florida, Inc., 712 So.2d 1141 (Fla. 3d DCA 1998); Southeast Bank, N.A. v. Almeida, 693 So.2d 1015 (Fla. 3d DCA 1997); Maner Properties, Inc. v. Siksay, 489 So.2d 842 (Fla. 4th DCA 1986); Lakeview Townhomes Condominium Ass'n v. East Florida, Dev. Corp., 454 So.2d 576 (Fla. 3d DCA 1984).
In its order certifying the class, the trial court relied upon Titan Group, Inc. v. Faggen, 513 F.2d 234 (2d Cir.1975), reasoning *265 that Titan authorized a suit based on "omissions" to be certified as a class action because an omissions claim did not involve a subjective analysis but rather a view of reliance in an "objective" manner, i.e., whether a reasonable man would attach importance to the alleged omissions in determining his course of action. Reliance on Titan was misplaced for several reasons. First, Titan was not a class action. Second, although the Titan court may have employed a reasonable man standard for materiality, a more careful reading of Titan reveals that it actually applied a "reliance" analysis to determine causation and liability. The Titan court focused on evidence showing what the particular plaintiff relied upon in entering the transaction at issue and determined that the plaintiff did not rely on the allegedly omitted information. As Titan makes clear, even use of the "reasonable person" standard does not eliminate the requirement that the party asserting fraud must show he or she would not have entered the transaction had the information been disclosed.
Finally, Titan does not involve Florida law. If Titan is read to dispense with any requirement of reliance, it is contrary to Florida law. Florida law imposes a reliance requirement in an omissions case, which cannot be satisfied by assumptions. See Morgan v. Canaveral Port Authority, 202 So.2d 884 (Fla. 4th DCA 1967). Florida law also requires a party asserting fraud to establish that but for the alleged misrepresentation or nondisclosure, the party would not have entered the transaction. See Great American Ins. Co. v. Suarez, 92 Fla. 24, 109 So. 299 (Fla.1926); Atlantic Nat'l Bank v. Vest, 480 So.2d 1328 (Fla. 2d DCA 1985); Billian v. Mobil Corp., 710 So.2d 984 (Fla. 4th DCA 1998); Hauben v. Harmon, 605 F.2d 920 (5th Cir.1979). If a plaintiff claims to be misled, but cannot demonstrate a causal connection between the defendant's conduct and the plaintiffs misapprehension, the plaintiff cannot recover. See Stroud v. Crosby, 712 So.2d 434 (Fla. 2d DCA 1998).
To further support certification of this class, the trial court referenced Silverman v. Pitterman, 574 So.2d 275 (Fla. 3d DCA 1991), for the proposition that materiality of fact is objective and can be determined by a jury on a class-wide basis. The trial court's reliance on Silverman for this proposition is also misplaced. Silverman was not a class action lawsuit. Silverman makes no mention, express or implied, that materiality of fact is objective and can be determined by a jury on a class-wide basis.
In its order, the trial court also cited Paladino v. American Dental Plan, Inc., 697 So.2d 897 (Fla. 1st DCA 1997), dismissed, 717 So.2d 527 (Fla.1998). Reliance on Paladino to distinguish Lance, and to justify certification of this class, is inappropriate. Paladino did not involve a claim of fraudulent omissions or any other type of fraud. Rather, Paladino involved a claim for breach of a contract, in which each of the class members had an identical provision for the court to construe.
To circumvent Lance, the lower court also referenced Kluge v. Crews Lake Road & Bridge District, No. 82-933-CIV-T-15, 1985 U.S. Dist. LEXIS 22530 (M.D.Fla. Feb. 15, 1985). Kluge is a federal district court case, and does not set precedent for Florida courts. Within the same Middle District of Florida, another United States District Judge has implicitly followed the Lance rationale and refused to certify a class where the claims are based upon fraudulent omissions. See Butterworth v. Quick & Reilly, Inc., 171 F.R.D. 319 (M.D.Fla.1997).
We conclude that there is no logical basis upon which to infer that the Lance prohibition against fraud class actions is limited to misrepresentation cases. The fact that the instant case involves alleged omissions rather than misrepresentations is irrelevant to the issue of class certification. The Lance court gave no indication that its holding dealt only with certain fraud actions and not others.
The Lance court reaffirmed the prohibition against fraud class actions because it determined that commonality, typicality, predominance of common questions and manageability had not been and could not be established in a case involving fraud on separate contracts. The court held that where separate contracts were involved, each purchaser would be able to establish the elements of fraud only by individual proof. What was *266 important to one purchaser may not have been important to another. This is precisely what the evidence at the class certification hearing in the instant case revealed.
To certify a class, rule 1.220(b) requires not only that common questions exist, but that those common questions predominate over individual questions. Rule 1.220 also requires a class action to be manageable and superior to other proceedings. To determine if the requirements of Rule 1.220 have been met, a trial court must envision how a class action trial would proceed.
Under this analysis, the trial court must determine whether the purported class representatives can prove their own individual cases and, by so doing, necessarily prove the cases for each one of the thousands of other members of the class. If they cannot, a class should not be certified. In the instant case, the requirements of rule 1.220 were never met. Individual questions predominate, making any class action trial unmanageable.
Under these circumstances, class representation is not "superior" to individual suits for the "fair and efficient adjudication" of any claims against Humana for alleged fraud. See rule 1.220(b)(3); Class Actions, 72 Fla. B.J. at 14. Any such claims will turn on the individual facts of each case if there is any liability at all. We conclude that certification of a class in this case was clearly contrary to rule 1.220 and the holding in Lance v. Wade and therefore reverse.
THREADGILL and GREEN, JJ., Concur.